Mildred Mitchell **JONES** et vir, Appellants,

v.

**HUNT OIL COMPANY** et al., Appellees.

No. 17450.

Court of Civil Appeals of Texas,
Dallas.

June 12, 1970.

Rehearing Denied July 10, 1970.

John A. Pace, Payne, Pace & Benners, Dallas, for appellants.

Ralph B. Shank, Shank, Irwin, Conant & Williamson, Dallas, Frank L. McClendon, Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, for appellees.

CLAUDE WILLIAMS, Justice.

Mildred Mitchell Jones, joined by her husband, Harry C. Jones, brought this action against Hunt Oil Company, Hunt Petroleum Corporation, Caroline Hunt Trust Estate, and its Trustees, Atlantic Richfield Company, Mobil Oil Corporation, and others, seeking to recover damages resulting from acts which were alleged to constitute wrongful conspiracy.*

Venue having been held to be properly laid in Dallas County, certain of the defendants filed their motions for summary judgment, supported by numerous affidavits, admissions and exhibits. Plaintiffs filed a reply to the motion, verified by one of their attorneys. Following a hearing the trial court sustained the motion and thereafter rendered judgment decreeing that plaintiffs take nothing against the named defendants. Certain other defendants not parties to the motion were dismissed. From this judgment plaintiffs have perfected their appeal.

Proper consideration and resolution of appellants' points of error require that we set forth the following essential and relevant antecedent facts which appear to be uncontroverted in this record.

Appellants were the owners in fee to a certain tract of land in Henderson County, Texas consisting of 20.55 acres. On August 16, 1951 appellant Mildred Mitchell Jones (then a single woman), as lessor, executed an oil, gas and mineral lease covering the land in question to S. S. Long, referred to in the record as the Long Lease. The primary term of this lease was ten

---

* The exact nature of plaintiffs' action was judicially determined by the Court of Civil Appeals at Eastland in an appeal of the venue question presented. Hunt Oil Co. et al. v. Jones et vir, 436 S.W. 2d 186 (1968, writ dism'd).

years with an annual delay rental which was paid throughout the primary term of the lease. Long subsequently assigned the lease so that on July 12, 1961 title to the leasehold estate was vested in S. H. Killingsworth, subject to certain overriding royalty interest. Subsequently Killingsworth assigned certain interests in the lease to Hunt Oil Company, Hunt Petroleum Corporation and Caroline Hunt Trust Estate. On July 12, 1961 Killingsworth, joined by Hunt Oil Company, Hunt Petroleum Corporation and other owners of leases in the immediate vicinity of the Long Lease, entered into a pooling agreement establishing a unit called the "Hunt-West Poynor Unit" for the purpose of drilling for and producing of oil and gas from the James Lime Formation. The entire pooling unit contained 170.86 acres, including the Long Lease. Thereafter the unit operators commenced drilling operations on land located in the Hunt-West Poynor Unit, but not on the Long Lease, and completed a producing oil well on or about August 16, 1961 which well has continued to produce oil in paying quantities. No well has been drilled on the lands actually described in the Long Lease.

On November 14, 1961 Hunt Oil Company, Hunt Petroleum Corporation, S. H. Killingsworth and the remaining lessees of the leases in the Hunt-West Poynor Unit executed a written instrument designated as an amendment to the unit agreement so as to exclude from the boundaries of the unit approximately 10 acres of land, leaving within the unit approximately 160 acres.

On February 27, 1962 Mildred Mitchell Jones and husband filed an action in the District Court of Henderson County against those named as appellees herein, but excluding Mobil, such suit being in the nature of an action for trespass to try title and in which they set forth the facts relating to the lease, the pooling arrangement, the amended designation of unit, and contended that the attempted pooling was invalid and not authorized under the terms of the lease so that the lease terminated on August 16, 1961 at the expiration of its primary term. Plaintiffs in that case prayed judgment that the lease be adjudicated as having been terminated and that the cloud cast by same be removed and for title and possession of said land. In that action plaintiffs did not seek or pray for the recovery of any damages by reason of the acts complained of in said suit nor were there any allegations concerning wrongful conspiracy. During the trial of the case in the district court plaintiffs, appellants here, stipulated in open court that if they prevailed in that suit and recovered the land in question they would ratify the Hunt-West Poynor Unit. Also it was stipulated that it was not the contention of plaintiffs that defendants (appellees here) acted in bad faith in pooling the lease; in drilling the well on the unit; in making application to drill the well; or in amending the description of the unit area. Judgment for defendants was rendered in the trial court and affirmed on appeal to the Court of Civil Appeals. However, on June 23, 1965 the Supreme Court of Texas reviewed the case and reversed the judgments of the lower courts. The Supreme Court held that appellants here were not bound by said unit agreement, that none of the unit production was effective to maintain the lease in force, that the lease terminated on August 16, 1961, the end of its primary term, and that appellants recover the land free of the Long Lease. The Supreme Court, in its opinion, specifically held that Killingsworth and the other unit owners in the unit acted in good faith in forming the unit, and securing a permit to drill and in drilling the well on the unit. The second motion for rehearing was denied by the Supreme Court on April 20, 1966. Jones et vir v. Killingsworth et al, 403 S.W.2d 325.

On February 3, 1968 the present suit was filed in which the pooling arrangement, the amendment to the same, the application to the Railroad Commission for permit to drill a well on the unit, the drilling of the

well and production of oil and gas therefrom, as well as numerous other ancillary acts constituted wrongful acts of civil conspiracy which resulted in damage to plaintiffs.

Defendants answered with specific denials and also affirmative defenses of limitation, *res judicata,* estoppel, ratification, and the absence of any facts which could legally constitute wrongful conspiracy resulting in damages.

## OPINION

As a basis for reversal of the summary judgment against them appellants assign six points of error.

The first point of error is: "The trial court erred in granting Appellees' Motion for Summary Judgment, because the record before the Court discloses that genuine FACT issues exist as to one or more disputed material facts. Para. 1."

In the statement and argument under this point appellants say "that an examination of Plaintiffs' First Amended Original Petition will show that Appellant alleges that the Appellees entered into a wrongful conspiracy in connection with the formation of the Hunt-West Poynor Unit in the Fairway Field in Henderson County, Texas; * * * that Appellees in furtherance of the announced purpose of the formation of the unit, the drilling of the well and the production of oil and gas interfered with the Appellants' property rights and the enjoyment of her right of ownership." They further say: "Acts of wrongful conspiracy and damages are specifically alleged in * * * Plaintiffs' First Amended Petition * * *." Further, they allege: "Therefore, all of the allegations of damages and conspiracy are in issue." Finally, in their conclusion, appellants say: "The allegations of Plaintiffs' First Amended Petition in a Motion for Summary Judgment must be taken as true and were all denied by the Defendants who filed answers; that, under these circumstances, the

court was in error in rendering Summary Judgment."

From these statements by appellants it is quite evident they are proceeding on the theory that the propriety of the action of the trial court in granting appellees' motion for summary judgment must be reviewed in the light of the sufficiency of appellants' pleadings alone. This position runs counter to the specific provisions of Rule 166–A, Vernon's Texas Rules of Civil Procedure, which was wisely designed to set it apart from other rules set up to test the sufficiency *vel non* of pleadings alone. In Arant v. Jaffe, 436 S.W.2d 169 (Tex.Civ. App., Dallas 1968), we had occasion to pass upon the identical question and there pointed out:

> "The summary judgment rule goes much further by permitting the parties to support their motions for summary judgment, as well as their opposition thereto, with affidavits, depositions, requests for admissions, and other 'summary judgment evidence.' It is this summary judgment evidence, and not the pleadings, that is looked to by the court to determine the existence or nonexistence of issuable facts. Moreover, it has been held that there is a duty on the part of a court to 'pierce the pleadings' in determining the question of the existence or nonexistence of issuable facts. Sparkman v. McWhirter, 263 S.W.2d 832 (Tex.Civ.App., Dallas 1953, writ ref'd)."

Our Supreme Court has had occasion in numerous instances to reiterate the longstanding rule that pleadings alone do not form the basis for judicial determination of the propriety of the trial court's action on a motion for summary judgment. The court has held, many times, that in summary judgment proceedings when the moving party supports his motion with affidavits or other summary judgment evidence it then becomes incumbent upon the adverse party to come forward and file counter affidavits or other summary judgment evidence in opposition thereto and, failing

to do so, suffer the consequences thereof. *Gulf, C. & S. F. Ry. Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (1958); *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948 (1960); *Allen v. Western Alliance Ins. Co.,* 162 Tex. 572, 349 S.W.2d 590 (1961).

In *Rothchild v. Fannin Bank,* 407 S.W. 2d 878 (Tex.Civ.App., Texarkana 1966, writ ref'd n. r. e.), the court reasserted the rule that a pleading even verified, was not sufficient to overcome a proper motion supported by appropriate summary judgment evidence. To the same effect see *St. Clergy v. Northcutt,* 448 S.W.2d 847 (Tex.Civ.App., Beaumont 1969, no writ).

In *Maxey v. Rodman,* 444 S.W.2d 353 (Tex.Civ.App., El Paso 1969, writ ref'd n. r. e.), the court considered a similar summary judgment[2] in a conspiracy action. The court said:

"Admittedly, it is difficult to prove a conspiracy or a fraud under these facts. But allegations of fraud or conspiracy do not, in and of themselves, raise fact issues prohibiting the granting of a summary judgment. *Martin v. Coastal States Gas Producing Company,* 417 S. W.2d 91 (Tex.Civ.App., 1967, n. w. h.); *Midwestern Development Co. v. Dunlap,* 389 S.W.2d 112 (Tex.Civ.App., 1965, n. r. e.). In order that there be a conspiracy, it can generally be said that the evidence must establish (1) there is a combination of two or more persons, (2) there is an agreement or meeting of the minds among these persons, (3) on a common object, purpose or course of action, (4) knowledge of the object and purpose, (5) one or more overt acts, and (6) intent to participate therein. *Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp.,* 435 S.W.2d 854 (Tex.Sup. 1969)."

■ Here we are faced with a summary judgment filed by appellees in proper form and supported by a host of exhibits, affidavits, admissions, and other forms of summary judgment evidence. Appellants did not counter the motion with like summary judgment evidence but, obviously proceeding on the theory of sufficiency of pleadings, relied upon an answer, though verified, by one of their attorneys. We have carefully reviewed this answer or reply and find that the same amounts to nothing more than repetitive assertions to those things pled in the first amended original petition. After repeating the operative facts set forth in the petition the attorney repeatedly states that such facts amount to a wrongful conspiracy. We are convinced that this verified reply does not legally meet the requirements of the rule as well as the opinions of our Supreme Court on the question.

■ We agree with appellees that appellants' first point of error is too general and indefinite so that it does not comply with the briefing rules. Rule 418, T.R.C.P. Almost identically worded points were condemned by us as being too general in *White v. Great American Reserve Ins. Co.,* 342 S.W.2d 793 (Tex.Civ.App., Dallas 1961); *Little v. Employees Security Life Ins. Co.,* 343 S.W.2d 517 (Tex.Civ.App., Dallas 1961); *Crutchfield v. Associates Investment Co.,* 376 S.W.2d 957 (Tex.Civ. App., Dallas 1964, writ ref'd); *Ballard v. Associates Investment Co.,* 368 S.W.2d 232 (Tex.Civ.App., Dallas 1963); and *Cotten v. Republic Nat. Bank,* 395 S.W.2d 930 (Tex.Civ.App., Dallas 1965). In practically all of these decisions, applying the rule of liberal construction, we looked to the argument and authorities under the point to determine if we could ascertain the issues of fact claimed to have been presented. We have done so in this case but find nothing in the argument and authorities under Point 1 which would advise us of the specific issuable facts claimed by appellants to have been presented to the trial court on the hearing of the motion for summary judgment. Not finding the issues relied upon by appellants in their brief we turn to Paragraph 1 of appellants' amended motion for new trial, found in the transcript, and there we find enumerated

nine alleged overt acts which appellants' allege interfered with their property rights in the fee ownership of the land causing damages. While we entertain doubt that we are required to do so we have proceeded to carefully examine each of the alleged overt acts which are contended by appellants to constitute issuable facts on the question of wrongful conspiracy.

Prior to a consideration of the alleged overt acts we deem it appropriate to examine the law relating to civil conspiracy which has been definitely settled by our Supreme Court. In Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854 (Tex.Sup.1969), Chief Justice Calvert reviewed the guidelines of this phase of the law:

> "A civil conspiracy has been defined by this court as 'a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.' Great Nat'l Life Ins. Co. v. Chapa, Tex., 377 S.W.2d 632, 635 (1964); State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550 (1937). But the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself. Starling v. Hill, 121 S.W.2d 648 (Tex.Civ. App.—Waco 1938, no writ); Shelton v. Lock, 19 S.W.2d 124 (Tex.Civ.App.— Amarillo, 1929, writ dism.); 16 Am.Jur. 2d 149, Conspiracy, § 344."

With these rules of law in mind we turn to the alleged acts claimed by appellants to constitute civil conspiracy, which are: (1) that defendants entered into the Hunt-West Poynor Unit agreement claiming a valid oil and gas lease to plaintiffs' land; (2) that defendants filed an application with the Railroad Commission for authority to drill a well upon land included in the unit but not upon the land included in the Long Lease; (3) that defendants entered into a joint operating agreement for the Hunt-West Poynor Unit designating Hunt Oil Company as operator and continued to operate the unit while claiming title to an oil and gas lease covering minerals under the plaintiffs' land; (4) defendants directed Mobil to enter upon and lay pipeline across plaintiffs' land; (5) defendants operated said Hunt-West Poynor Unit claiming title to an oil and gas lease on plaintiffs' land until final judgment of the Supreme Court which divested and removed their claim of title; (6) defendants claiming title to plaintiffs' land received from the Railroad Commission an allowable assuming title to 160 acres including plaintiffs' land; (7) defendant Mobil advised plaintiffs that it would withhold that part of the proceeds of sale of production of oil and gas from the Hunt-West Poynor Unit attributable to plaintiffs' land, but fraudulently and secretly made payment to other defendants; (8) defendants advised the plaintiffs they would not allow plaintiffs to obtain a permit to drill a well on plaintiffs' land; and (9) defendants, from August 1961 until April 20, 1966, produced oil from the Hunt-West Poynor Unit, claiming the title to that portion which defendants by their unit declaration, admitted was attributable to plaintiffs' land.

An examination of the summary judgment evidence contained in this record convinces us that appellees have sustained their burden of demonstrating that they have established as a matter of law that there is no issue of fact on the question of conspiracy. As Chief Justice Calvert said in the recent case of Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.1970), in a summary judgment case:

> "* * * the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of the plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action."

The record demonstrates that the unit agreement was entered into on July 12,

1961 before the expiration of the primary term of the Long Lease. The unit agreement was amended on November 14, 1961 so as to provide for unit area of 160 acres. The unit agreement, as amended, was the same Hunt-West Poynor Unit which appellants agreed in open court to ratify if they prevailed in the Jones v. Killingsworth litigation. This is the same unit agreement of which the Supreme Court in its opinion in Jones v. Killingsworth said that Killingsworth and the other unit owners acted in good faith in forming. Throughout the litigation of Jones v. Killingsworth it was appellants' position that the unit agreement did not bind them in any way in that they were not parties thereto. In their answer to the motion for summary judgment appellants state: * * * in this suit the Plaintiffs [appellants here] do not contend that they are entitled to share in the production, or that their land was a part of the unit, or that the defendants [appellees here] were under a duty to offer the Plaintiffs the opportunity to ratify * * *. " Appellants in their sworn reply to appellees' motion for summary judgment state: "Plaintiffs have not claimed and do not claim that they were entitled to share in any of the Hunt Oil Company production from the unit."

Concerning the application with the Railroad Commission for authority to drill a well upon the unit, it is undisputed that in Jones v. Killingsworth appellants stipulated, among other things, that they were not contending that Hunt Oil Company had acted in bad faith in applying to the Railroad Commission for permit to drill a well on the unit. The Supreme Court specifically held that the permit granted by the Railroad Commission was valid. As to the joint operating agreement to operate the unit well the record is undisputed that appellants in this suit do not contend that they are entitled to share in the production or that their land was a part of the operating unit.

Concerning the laying of a pipeline across plaintiffs' land, the record reveals that on June 27, 1966 appellants executed and delivered to Magnolia Pipeline Company a right-of-way and easement over, across and through appellants' land, reciting receipt of money "for all damages to this date caused by laying, maintaining and operating a four inch pipe in the place and manner in which it has been laid * * * through the lands" of appellants. Moreover, appellants, on July 16, 1966, ratified the "Fieldwide Unit." This unit agreement recites in part: "The parties hereto, to the extent of their rights and interests, hereby grant to Working Interest Owners the right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for Unit Operations; * * *."

Concerning the Railroad Commissions' order in issuing allowable to 160 acres, the substance of this alleged overt act is that since the unit acreage was less than 160 acres the unit allowable granted to appellees by the Railroad Commission was too large. The Supreme Court in Jones v. Killingsworth held that there was no contractual relationship between appellants and appellees whereby appellees could allocate any of the unit production to the Long Lease and maintain it in force. The Supreme Court expressly held: "The orders of the Railroad Commission cannot compel pooling agreements that the parties themselves do not agree upon. The Railroad Commission has no power to determine property rights."

The record is undisputed that Mobil was a purchaser of the unit oil. It was not a signatory to the Hunt West Poynor Unit agreement. It purchased the unit oil and its duty was to account to the true unit owners for their share in the unit oil purchase. Appellants have disclaimed any right to an accounting or for any loss of oil or gas owned by them from their lease.

Appellants claim that appellees told them that they would not allow appellants to obtain a permit to drill a well on appellants' land and that such is an issuable

fact. Permits to drill wells in search of oil and gas are granted or denied by the Railroad Commission upon application. It is undisputed that appellants never made an application to the Railroad Commission for a permit to drill a well on their land during the period of January 1, 1961 to April 25, 1969. Title disputes do not prohibit the issuance of permits by the Railroad Commission. Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189 (1943).

From this review of the record we find no evidence of a civil conspiracy as defined by the Supreme Court. The act of appellees in entering into the Hunt-West Poynor Unit agreement was neither for an unlawful purpose nor to accomplish a lawful purpose by unlawful means. There is no evidence that appellants were injured by such act. They specifically withheld any claim for injuries or damages when they filed Jones v. Killingsworth. Moreover, by appellants' own acts and conduct, by their stipulations, ratifications, and specific grants, they are barred from asserting damages.

■ Appellees' defense of ratification has been established in this record, as a matter of law. After the unit was created, and prior to the filing of Jones v. Killingsworth, appellants were offered an opportunity to ratify the unit agreement but they refused. Appellants continued to refuse to become bound to any unit established by appellees until they first sought to ratify same in May 1966. During the trial of Jones v. Killingsworth appellants stipulated in the record that if they prevailed in this suit to recover the land they agreed to ratify the unit. Throughout the entire litigation appellants' position was that their land was not bound by the unit and that they claimed no money damages for the use or taking of oil, gas and minerals from the unit. The Supreme Court upheld their position. Thereafter appellants ratified and confirmed the unit agreement and became active participants in the same. By doing

so they became bound to the unit venture fully as if they had joined in the original execution. Such was held by the Supreme Court in Montgomery v. Rittersbacher, 424 S.W.2d 210 (Tex.Sup.1968), in which a non-participating royalty owner filed suit to participate in lease production unitized by reason of an entirety clause in the lease. The court said that Montgomery could not recover royalties from the date of the first production from the lease but could recover from the date of his ratification and said that by such ratification Montgomery was as much bound by the unauthorized terms of the lease as if he had joined in the original execution thereof. See also our opinion in Leopard v. Stanolind Oil & Gas Co., 220 S.W.2d 259 (Tex. Civ.App., Dallas 1949, writ ref'd n. r. e.).

■ Concerning appellants' claim that they suffered damages by Mobil not suspending payment of unit benefits allocated for accounting convenience to the Long Lease until the title suit had been finally concluded, we are of the opinion that appellants by their own acts and conduct have become estopped to assert such contention. Appellants took the position in Jones v. Killingsworth that they were not bound by the terms of the unit agreement and that their original lease had terminated. The Supreme Court held that they were not bound and that in the absence of a contractual relationship between appellants and appellees the unit production, regardless of how allocated, was not effective to maintain the Long Lease in force beyond its primary term. Said the Supreme Court: "Absent express authority, a lessee has no power to pool interests in the estate retained by the lessor with those of other lessors." Thus not being bound to the unit it mattered not how appellees operated the unit or how the unit oil might be allocated for accounting purposes by Mobil.

"One who has successfully taken and maintained, either by pleading, admission, or agreement, a particular position in a ju-

dicial proceeding is estopped by the judgment therein from taking an inconsistent position in subsequent proceedings, such as an appeal or a retrial of the case, or another suit involving the same subject matter." 34 Tex.Jur.2d, Judgments, § 349, pp. 480–481.

Having disclaimed any right to the unit or its production in Jones v. Killingsworth, appellants are in no position to now say that the disposition made of the overall proceeds from the sale of the production of the unit well resulted in their damage.

■ We agree with appellees' counterpoint that appellants' action in failing to present their claim for damages in the prior suit of Jones v. Killingsworth effectively bars appellants' present suit for damages because in both suits the relief sought is based upon the same alleged operative facts. In the first case appellants sought the relief of possession, title and removal of cloud cast upon the Long Lease. In the present suit, based upon the same operative facts, appellants seek the relief of damages for alleged civil conspiracy. The relief of damages was available in the trespass to try title action. Rule 783, T.R.C.P. and Rule 805, T.R.C.P.

The principle of law condemning splitting of causes of action is stated in 34 Tex.Jur.2d, Judgments, § 516, p. 592, as follows: "A party will not be permitted to split a single and indivisible claim or demand so as to make it a basis for successive suits, and if he attempts to do so, the judgment in the first case decided will bar prosecution of the others, * * *."

In 1884 our Supreme Court, in Nichols v. Dibrell, 61 Tex. 539, said it was settled that the decision of a court of competent jurisdiction is conclusive, not only as to the subject matter determined, but as to every other matter which the parties might have litigated in the case and which they might have decided. The court said:

"* * * the plea of *res judicata* applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time."

To the same effect see: Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97 (Tex. Sup.1894); Cole v. Wadsworth, 376 S.W. 2d 13 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.); and Ladd v. Ladd, 402 S.W.2d 940 (Tex.Civ.App., Amarillo 1966, writ ref'd n. r. e.).

■ Appellees specifically pled that appellants' cause of action was barred by the two year statute of limitations. Art. 5526, Vernon's Ann.Civ.St. of Texas. Appellees contend that the summary judgment proof demonstrates that all of the material overt acts complained of by appellants were committed as far back as 1961 and were certainly known to appellants at the time they instituted their suit in Jones v. Killingsworth in February 1962. With such knowledge no suit for damages based on wrongful conspiracy was filed for more than six years. We agree with appellees that the statute of limitations has effectively barred appellants' cause of action. There is no merit in appellants' contention that the statute of limitations did not begin to run until the judgment of the Supreme Court in Jones v. Killingsworth decreeing title to the land. The trespass to try title judgment did not act to create a new liability or a cause of action. Such judgment merely confirmed that the Long Lease covering appellants' land terminated on August 16, 1961.

We have carefully examined all of appellants' points of error and find all to be without merit so that they must be overruled.

Judgment of the trial court is affirmed.