**CHEROKEE WATER COMPANY,
et al., Appellants,**

v.

**ADVANCE OIL & GAS COMPANY,
et al., Appellees.**

No. 6–91–126–CV.

Court of Appeals of Texas,
Texarkana.

Oct. 27, 1992.

Rehearing Denied Nov. 24, 1992.

Charles Clark, Offices of Charles H. Clark, Tyler, Ron Adkison, Wellborn, Houston, Adkison, Mann, Henderson, for appellants.

Charles W. Sartain, Godwin, Carlton & Maxwell, Dallas, for appellees Advance Oil & Gas Co., et al.

Lu Pham, Vinson & Elkins, Houston, for appellee Texas Eastern Transmission Corp.

Bradley W. Hoover, Mayer, Brown & Platt, H. Bruce Golden, Buck, Rouner, Golden, Keenan, Ballard, Houston, for appellee United Gas Pipe Line Co.

Dan Miller, McElroy & Sullivan, Austin, for appellee Graham–McCormick Operating Partnership, et al.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Cherokee Water Company and others appeal from adverse summary judgments. They brought actions against Advance Oil & Gas Co. and Graham–McCormick Operating Partnership, seeking damages and recovery on theories of unjust enrichment, money had and received, conversion, trespass, and constructive trust. They also sought damages from United Gas Pipe Line and Texas Eastern Transmission Corporation for conversion. Because we find that all of these claims are barred by the statute of limitations, we affirm the judgments.

Joining Cherokee in the suit are Ray B. Power, Jr., Les Kroeger, John D. Gourley, and The Sovereign Corporation (sometimes referred to collectively as "the Cherokee group"). To understand the arguments on appeal, it is necessary to review the previous litigation involving Cherokee and some of the other parties.

In 1947, Cherokee purchased the surface of a 59.71 acre tract in Rusk County for the purpose of constructing a lake. The sellers reserved all mineral rights but gave Cherokee and its assigns a right of first refusal to purchase the minerals. After several oil and gas leases had been executed by the mineral owners and production was obtained, Cherokee attempted to exercise its right of first refusal to obtain a lease on the tract. After extended litigation, the Supreme Court held that Cherokee was entitled to the lease, and affirmed a trial court judgment ordering the mineral owners to execute the lease to Cherokee. *Cherokee Water Co. v. Forderhause*, 641

S.W.2d 522 (Tex.1982) (*Cherokee I*). The effect of that judgment was to void the existing lease (Boase–Woods lease) and place title to the leasehold estate in the 59.71 acres in Cherokee. The Supreme Court denied motion for rehearing in that case on October 20, 1982.

The mineral owners had included in the *Cherokee I* litigation a plea that, if the preferential right to purchase held by Cherokee included oil and gas leases, their deed to Cherokee be reformed to exclude oil and gas leases from its effect. The reformation action was severed by the trial court and proceeded as a separate action from *Cherokee I*. Ultimately, the Supreme Court held for Cherokee in the reformation action. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377 (Tex.1987) (*Cherokee II*). The motion for rehearing was denied on January 20, 1988.

During the pendency of *Cherokee I*, the lessees of the contested mineral lease were E.S. Boase and Neal Woods. Advance Oil & Gas and Graham–McCormick Operating Partnership are assignees of Boase and Woods. In 1981, the Boase–Woods lease on the 59.71 acres was pooled into the Paul Gas Unit. The lease to Cherokee resulting from the decision in *Cherokee I* has never been pooled into the Paul Gas Unit. Texas Eastern and United purchased gas from the Paul Gas Unit. Cherokee seeks in this suit to recover an interest in the gas sold from the Paul Gas Unit and to recover damages for conversion, unjust enrichment, money had and received, and trespass.

■ The Cherokee group contends first that the court erred in granting summary judgment on the basis of limitations. This suit was filed April 29, 1988, and Cherokee argues that its causes of action did not accrue until January 20, 1988, the date on which the Supreme Court's decision in the reformation suit, *Cherokee II*, became final. The trial court disagreed and found that the causes of action accrued at least in 1982, when the Supreme Court's decision in *Cherokee I*, establishing Cherokee's title to the lease, became final and the last year

the appellees purchased gas from the Paul Gas Unit.

Cherokee contends that the pendency of *Cherokee II* prevented the statute of limitations from running because its title to the disputed mineral interest depended on the decision in that case. It relies on the general rule that where a right of action depends on an adjudication in another suit, the statute of limitations does not run as long as an appeal in that case is pending. That proposition is inapposite here. *Cherokee II* was not an appeal from *Cherokee I*. In all the cases Cherokee cites in its support, an appeal was necessary to determine title to the injured property, and the appeal tolled the statute of limitations. That is not the situation in this case.

Cherokee held good title to its lease on the 59.71 acres when *Cherokee I* was finally decided. *Cherokee I* could not be appealed after October 20, 1982, and nothing prevented the Cherokee group from bringing its claims for damages at that time. The fact that parties other than these appellees were contesting Cherokee's title in another, separate suit for reformation did not operate to suspend the limitation statutes for wrongs these appellees allegedly committed with Cherokee's full knowledge. The severed reformation action, *Cherokee II*, was an independent suit. *See Kansas University Endowment Ass'n v. King*, 162 Tex. 599, 350 S.W.2d 11 (1961). It did not toll limitations for wrongs done by appellees to Cherokee's interest any more than any separate challenge to a landowner's title by a third party would suspend limitations against another who trespasses on the landowner's property. Indeed, Cherokee could have brought its damages claims in *Cherokee I*, the action in which it claimed title to the mineral interest. *See Salinas v. Crown Central Petroleum*, 647 S.W.2d 384 (Tex.App.–San Antonio 1983, writ ref'd n.r.e.).

In cases with facts similar to these, courts have held that the statute of limitations on a property damage claim begins to run even before the claimant held legal title to the property. *McGuire v. Baker*, 421 F.2d 895 (5th Cir.), *cert. denied*, 400

U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970); *Jones v. Hunt Oil Co.*, 456 S.W.2d 506 (Tex.Civ.App.–Dallas 1970, writ ref'd n.r.e.). In *McGuire*, the Fifth Circuit found the statute of limitations to have run from the date the wrong was committed, even though title to the injured property had not been settled. Both *Jones* and *McGuire* were oil and gas cases in which the claimants sought damages for the pooling of and production from contested mineral interests. And both the *Jones* and *McGuire* courts emphasized that the plaintiffs had known of their interest in the minerals and also had known of the pooling and production about which they complained. *McGuire v. Baker*, 421 F.2d at 899; *Jones v. Hunt Oil Co.*, 456 S.W.2d at 514. As the plaintiffs in those cases delayed bringing their claims until the title disputes were settled, long after the mineral production began, the statute of limitations had run.

In the present case, gas was being produced from the Paul Gas Unit by 1982. Cherokee knew at least by October 20, 1982, that it held good title to the lease it acquired by *Cherokee I* covering the 59.71 acres included in the unit.

 The two-year statute of limitations applies to each of the Cherokee group's causes of action. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986); *City of Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448 (1947); *Hornblower & Weeks–Hemphill, Noyes v. Crane*, 586 S.W.2d 582 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n.r.e.); *Western Inn Corp. v. Heyl*, 452 S.W.2d 752 (Tex.Civ.App.–Fort Worth 1970, writ ref'd n.r.e.). Because those causes of action accrued in 1982 but were not filed until April 29, 1988, the claims are barred.

 The Cherokee group contends that the statute of limitations was tolled because Cherokee filed a *lis pendens* notice during *Cherokee I*. They argue that since appellees were not parties to *Cherokee II* they could not have a greater interest in the mineral estate than their grantors, who were parties to *Cherokee II*. Thus, they argue, the statute of limitations was tolled during *Cherokee II* because appellees did not intervene to protect their interests. The Cherokee group cites no authority for the proposition that the filing of a *lis pendens* notice tolls the statute of limitations in a case of this nature, and we have found none. Appellees knew during pendency of *Cherokee II* that Cherokee had title to the 59.71 acre leasehold, as established by the Supreme Court's final decision in *Cherokee I*. Thus, the *lis pendens* notice had no practical effect on appellees' positions.

 The doctrine of *lis pendens* is based on the public policy that there should be an end to litigation. It accomplishes that policy by preventing alienations that would defeat the litigation and that would deprive the plaintiff of his relief by putting the property beyond the reach of the present action. *City National Bank v. Craig*, 113 Tex. 375, 257 S.W. 210 (1923); 1 Tex. Jur.3d *Actions* § 283 (1979), and cases there cited. The doctrine does not void a conveyance during the pendency of the suit. The interest of the grantor merely passes subject to the determination of the cause. If the grantor recovers the interest, the grantee succeeds to it; if not, the grantee acquires nothing. *Rosborough v. Cook*, 108 Tex. 364, 194 S.W. 131 (1917). The common law rule of *lis pendens* has been codified as it applies to eminent domain proceedings and suits involving title or interests in, or to enforce any lien on, real property. Tex.Prop.Code Ann. § 12.-007 (Vernon 1984). The rule effectively prevents a grantee from being an innocent purchaser. Tex.Prop.Code Ann. § 13.004 (Vernon 1984); *Roberts v. Dreyer*, 200 S.W. 1097 (Tex.Civ.App.–San Antonio 1918, writ ref'd). It does not suspend or toll the statute of limitations on causes of action a property owner may have for trespasses, conversions, or other wrongful acts of which he has notice.

 The Cherokee group also complains about a summary judgment granted in favor of appellee Graham–McCormick on a declaratory judgment counterclaim. It states in its tenth point of error that this ruling was erroneous, but then fails to state why the court's ruling was erroneous.

Points of error not argued are waived. *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820 (Tex.App.–Austin 1990, writ denied); *J.B. Custom Design and Bldg. v. Clawson,* 794 S.W.2d 38 (Tex.App.–Houston [1st Dist.] 1990, no writ).

Because we find that the statute of limitations bars the causes of action in this case, it is unnecessary to review appellees' contentions that the petition fails to state a cause of action. The summary judgments rendered by the trial court are affirmed.