E. O. ALLEN v. WESTERN ALLIANCE INSURANCE COMPANY

No. A-8368. Decided July 19, 1961
Rehearing overruled October 11, 1961
(349 S. W. 2d Series 590)

*Saunders, Saunders & Grossenbacher,* of San Antonio, for petitioner.

*Evans & Williams, Green, Green & Wiley* and *Preston H. Dial, Jr.,* of San Antonio, for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a suit by the Reverend E. O. Allen for reimbursement of medical expenses alleged to be due under a policy of insurance. The question is whether Allen gave notice to the insurance company "as soon as practicable" after the accident as required by the policy. The trial court entered a summary judgment denying Allen a recovery. That judgment was affirmed by the Eastland Court of Civil Appeals. 343 S.W. 2d 765. It held that under the circumstances, failure to give notice for 107 days did not, as a matter of law, constitute the giving of notice "as soon as practicable." The opinion of the Eastland Court is based on this Court's opinion in *Klein v. Century Lloyds,* 154 Tex. 160, 275 S.W. 2d 95 (1955). The *Klein* case involved an asserted liability under automobile coverage of public liability. We granted a writ of error upon the assertion by Allen that there is, or should be, a different basis for the requirement of notice under public liability coverage and the requirement of notice for reimbursement for medical expenses. Under the provisions of the policy and the circumstances in question, however, we are of the opinion that the trial court correctly granted the respondent's motion for summary judgment. The judgments of the courts below will, therefore, be affirmed.

The facts were developed by depositions introduced on the hearing. The deposition of petitioner Allen revealed the following:

Allen purchased a policy of public liability, property damage, and medical reimbursement from Western Alliance Insurance Company through its agent in San Antonio, W. A. Rogers. The limits of the public liability were $5,000 and $10,000, the property damage $5,000. The medical reimbursement limits were $1,000 for each person injured. A separate premium was shown for each coverage, all in the same policy.

The policy had one paragraph under "Conditions" calling for the giving of notice. It applied to all coverages: public liability, property damage, and medical reimbursement.

It reads:

"Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the insured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents *as soon as practicable.*" (Emphasis ours.)

The policy also provided that "no action shall lie against the company unless, as a condition precedent hereto, the insured [Allen] shall have complied with all the terms of this policy * * *."

Allen also had purchased an automobile policy of fire, theft and collision from a different company (National Lloyds) through the Pat J. Morris Insurance Agency of San Antonio.

About 15 minutes before the policy with Western Alliance expired, i.e., at 11:45 p.m. on December 1, 1958, Allen and his wife were in a two-car collision. He and his wife were severely injured and hospitalized. Within three days, however, members of Allen's family employed counsel to represent Allen and his wife in claims arising out of the collision. Allen ratified the employment. Three days after the collision, i.e., on December 4, 1958, the company carrying the collision insurance (the Pat Morris Agency) was notified of the collision.

Allen remained in the hospital 11 days. After his original unconsciousness and shock, there was nothing wrong with his hands, feet, ears or voice. There was a telephone in the hospital

which he used. Upon leaving the hospital, he stayed at his daughter's house about a week. There was a telephone by his bed there. Thereafter he was at home and could walk. He had a telephone there. About a month after the accident, Allen had a conversation with Pat Morris about the collision coverage.

Allen said his attorney, Mr. Joe Saunders, "got on the ball" and instituted proceedings right away against Ben Maddox, the driver of the other car. Allen had a conference with his attorney and the attorney for Maddox looking to a settlement of Allen's claim against Maddox. On that same day, February 3, 1959, a settlement was reached with Maddox whereby the insurance company for Maddox (the International Service Insurance Company) paid Allen $16,500 for injuries to himself and to his wife and for medical and other expenses. In making the settlement, Allen furnished Maddox's insurance carrier a full, itemized statement of all his medical, nursing, hospital, X-ray, ambulance, drug, and other expenses incurred up to that time. Allen and his wife executed a released to Maddox. [It was not until some six weeks later, on March 17, 1959, that written notice was received by respondent, Western Alliance, of the collision.]

Allen could not remember when he gave notice to the Western Alliance Insurance Company. He said he gave notice by calling his attorney. "I found that my family had not reported this insurance that I had to Mr. Saunders, and I reported it to him * * *." Allen made a written report, a proof of loss, to Western Alliance on April 1, 1959. It was the first such report he had made. He never did report the matter to Mr. Rogers, the agent from whom he had purchased the policy.

The respondent Western Alliance also introduced the deposition of its vice president for claims, G. C. Boddeker. He testified that on March 17, 1959, he received a letter dated March 16 from Saunders & Saunders, attorneys, regarding Allen's collision. The company, Boddeker said, had received no previous notice. The very first notice the company had received was that on March 17, 1959.

The letter from Saunders to Boddeker recites also that "Mr. Bob McKenzie requested that we send you a narrative report on Rev. and Mrs. Allen, which reports are enclosed herewith." [The claim follows.] Then the attorney said in the letter that he would appreciate the company's sending its check "as we have been consulting with Mr. McKenzie for several weeks on

this matter and our client is becoming very impatient." Bob McKenzie is not identified or discussed in any of the depositions. In its sworn answer, the Western Alliance denied that McKenzie or the McKenzie Claims Service was its agent or had authority to bind the company; it had only limited authority to investigate and make reports to the company.

Western Alliance also introduced the deposition of its assistant secretary, T. W. George, Jr., who furnished a copy of the policy which had been written for Allen. It is attached to his deposition.

The depositions of Allen, Boddeker, and George were introduced along with the insurance policy in the hearing on the Western Alliance motion for summary judgment. The insurance company's answer, which sets out the facts substantially as set out above, was sworn to by its counsel and was also before the court. The plaintiff Allen introduced no other exhibits, no depositions, and no affidavits. His pleadings are not sworn to.

In his unsworn pleadings, it is alleged for Allen that his attorney did give notice as soon as practicable by letter of March 16, 1959, and that Allen made his written proof of loss on April 1, 1959. It is alleged that because of the serious injuries to Allen and his wife, Allen could not locate Rogers, the agent, or his memorandum of the insurance; "that immediately upon finding said memorandum of insurance, which was at least several weeks prior to March 16, 1958 [he meant 1959]," Allen mailed a copy of the memorandum of insurance to his present counsel, "and said attorney immediately called the Western Alliance Insurance Company and was advised that Mr. Bob McKenzie was their representative who handled all local claims for their company; that said attorney immediately called Mr. McKenzie and was advised by him that he had a copy of the police report describing the accident, and that based upon his personal knowledge of the accident and the severity of the injuries received by plaintiff and his wife, he would pay the claim as soon as proper bills were presented to him; that within a few days thereafter, said attorney again contacted Mr. McKenzie and advised him that all the bills were together and ready to be presented * * * and at that time Mr. McKenzie stated that his company was 'stalling' * * * but that if said attorney would send a narrative report of the injuries and the bills showing the amount of the medical expenditures, etc., to Mr. Boddaker, Head of the Claim

Department \* \* \* that said claim would be paid;" that prior to March 16, the attorney also called the president of the company and advised him of the facts, and he referred him to Boddeker who told him he would have to take the matter up with their legal department.

The authorities on the question as to what constitutes the giving of notice "as soon as practicable" under policies of liability insurance are set out in an annotation in 18 A.L.R. 2d 443, at page 447 and following. The annotation says at page 448 that delays of 2 to 25 days have been held to be reasonable ( as soon as practicable) ; whereas delays from 28 days to 2½ years have been held to be unreasonable, or not "as soon as practicable" under the circumstances. This Court in *Klein v. Century Lloyds*, 154 Tex. 95, 275 S.W. 2d 95 (1955), held that a delay of 32 days, under the circumstances, was not notice "as soon as practicable" as a matter of law. That case further held that the giving of the notice prescribed in the contract of insurance was a condition precedent to liability under the policy, and that lack of injury to the company would not excuse the giving of the required notice. Counsel for Allen, on oral argument, expressed doubt as to whether the *Klein* case was correctly decided. We have no occasion to review the *Klein* case here. The facts in this case go far beyond those in the *Klein* case: notice was given by Allen, or someone for him, to another insurance company within 4 days of the accident; he effected a settlement with another insurance company some 6 weeks before the giving of notice to Western Alliance, in which settlement he fully itemized his medical expenditures; and there is no showing that Western Alliance had any knowledge of the collision anytime soon after the collision. There is sworn testimony that it had no knowledge of it until the letter received on March 17, 1959.

We do not think the unsworn allegations of Allen's petition raise a fact issue, particularly in view of the depositions which supported the motion for summary judgment. Assuming that McKenzie was an agent of Western Alliance (which it denied under oath), there is no showing as to when the conference with him took place, except that it was "several weeks prior to March 16, 1958" [which we take to be 1959]. In an action on a motion for summary judgment, where the motion is supported by affidavits, depositions and other extrinsic evidence sufficient on their face to establish facts which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to

a material fact, or must justify his inability to do so and seek appropriate protection. *Sparkman v. McWhirter*, 263 S.W. 2d 832 (Tex. Civ. App. 1953, writ refused).

The rule is stated in 4 McDonald, *Texas Civil Practice*, § 17.26, at page 1389:

"Hence the sound rule is that a genuine issue of material fact is not raised by allegations in a pleading when they are controverted by affidavits or other evidence, in the absence of counteraffidavits or evidence to sustain them."

This proposition is supported by Professor Robert W. Stayton in 29 Texas Law Review at page 688.

Counsel for Allen suggests that a different rule for the giving of notice should apply in public liability insurance cases [where immediate investigation is necessary] and in medical reimbursement cases [where, it is argued, there is less urgency and the proof is more easily ascertainable]. That point may be determined in a case in which the problem properly arises for decision. In this case, however, both coverages are written in the same policy with but a single notice provision applicable to both. We are unwilling to say that the same words, the notice provision, in the same policy mean one thing under some circumstances and a different thing under others. The contention that the notice provision should be given different meanings as to public liability and medical reimbursement was made before the Supreme Court of Vermont in *Merchants Mutual Casualty Co. v. Izor*, 111 A. 2d 732 (1955). That court in rejecting the contention held "both [coverages] are subject to the same condition precedent as to notice." 111 A.2d at 734.

We hold that as a matter of law the failure to give notice for 107 days, under the circumstances of this case, did not constitute the giving of notice "as soon as practicable" after the accident. The judgments of the courts below are affirmed.