**Homer G. MAXEY et al., Appellants,**

**v.**

**J. L. IRISH et al., Appellees.**

**No. 4371.**

Court of Civil Appeals of Texas, Eastland.

May 15, 1970.

Rehearing Denied June 12, 1970.

Cade & Bowlin, James O. Cade, Brownwood, for appellants.

LaFont, Tudor, Tunnell, Formby & Reed, Grady Tunnell, Plainview, Key, Carr, Carr & Clark, Lubbock, Shafer, Gilleland, Davis, Bunton, & McCollum, Odessa, for appellees.

GRISSOM, Chief Justice.

Homer G. Maxey and others sued Citizens National Bank of Lubbock, its officers and directors for damages alleged to have been the result of an unlawful conspiracy to cause plaintiffs to lose their property and for it to be converted by defendants, damaging plaintiffs' credit, goodwill and reputation, for which they sought $6,000,000.00 actual and $8,000,000.00 exemplary damages. Defendants J. L. Irish and Harold Hinn, directors of Citizens National Bank of Lubbock, were alleged to be liable by reason of their negligence as directors in not knowing about and preventing such

alleged acts by the bank's attorneys and officers.

Irish and Hinn's pleas of privilege were sustained and the case as to them was transferred to Hale County. There, Irish and Hinn filed motions for summary judgment to the effect that the pleadings, affidavits, depositions and papers on file showed there was no genuine issue as to any material fact and there was no evidence of probative force on file indicating their personal liability. Each filed a detailed affidavit in which he swore he had not conspired with any one to defraud plaintiffs; that he did not promise Maxey an open line of credit to get him to move his business to Citizens; that he did not tell any plaintiff he had to sign any security instrument; that he did not act with any officer, director or attorney of Citizens in connection with obtaining security from plaintiffs, or foreclosing on their property; that he never made any representation to any one contemplating making a loan to plaintiffs; that he did not conspire with any defendant for foreclosure of a lien upon plaintiffs' property; that he did not participate in the purchase or sale of plaintiffs' assets; that he did not act with any one to convert plaintiffs' property, nor discuss same with any one; that he never interfered with plaintiffs' business; that his only interest in plaintiffs' assets was his desire for them to be sufficient to secure their indebtedness to Citizens; that he did not know Maxey had obtained a commitment for a loan to pay Citizens or that such a commitment was interfered with by any one. They attached to their motions copies of the depositions of all the plaintiffs except Maxey, all of whom testified that the Maxey businesses owned in part or operated by them, they being Maxey's daughters and sons-in-law, were controlled by Maxey and, in effect, that they neither knew nor had they heard that Irish or Hinn participated in any of the acts that constituted the basis of plaintiffs' cause of action.

Plaintiffs propounded interrogatories to Irish and Hinn to which each answered that, although he was a director of Citizens, he had never been on its loan committee nor took part in any management function of the bank, because he did not reside in Lubbock County; that he did not authorize calling the Maxey loans and had no knowledge thereof; that he did not know Maxey was required to execute security instruments covering all his property; that he did not know that Maxey's attorney conspired with officers of the bank and persuaded plaintiffs to execute such instruments, or that said attorney, knowing Maxey had obtained a commitment for a loan sufficient to pay Citizens, withheld knowledge thereof from Maxey and persuaded Maxey to allow Citizens to foreclose; that he did not know that said attorney told the would be lender that Maxey did not want the loan, and turned it down for Maxey; that he did not know of the indicated conduct of the officers and attorneys of the bank or of a conspiracy to obtain plaintiffs' property.

Plaintiffs filed controverting affidavits opposing Irish and Hinn's motions; they attached copies of answers to interrogatories propounded to Wakefield, Drumwright and Brady and evidence that plaintiffs did not know why the deal to obtain a loan to pay off Citizens Bank failed to materialize until after their attorney went to Kansas City and interviewed W. L. Brady. Wakefield, a financial consultant in Los Angeles, testified that he met Maxey in 1967; that Drumwright of Phoenix requested a loan to plaintiffs of $1,300,000.00; that, since it was not his company's policy to make such loans "without take out commitments by others", he contacted an insurance company through Brady; that a tentative agreement was made for the purchase of plaintiffs' property, or a loan to pay plaintiffs' debts; but that he then received a call from Brady saying the deal was off because a Lubbock "banker or attorney" connected, he believed, with Citizens told him that Citizens was going to make the loan and therefore his loan would not be needed.

Drumwright testified that he was familiar with Maxey and the other plaintiffs; that he went to Lubbock at the request of Maxey to inspect and appraise his cattle and personal property; that he told Williams, Citizens' president, that he was there for that purpose; that Williams stated that Maxey's ranches were not worth as much as the amount of Citizens' loan to Maxey, because they were losing money; that he inspected Maxey's ranches in Missouri and Ohio and when he came to Lubbock to inspect Maxey's ranches in that area the weather was too bad to fly so that, on April 26, 1965, he and his pilot and Mr. Maxey got a station wagon and inspected plaintiffs' feed lot ranches in New Mexico and another Maxey ranch near Tucumcari; that they prepared an application for a loan on said property; that he recommended that his company either borrow the money to buy the Maxey ranches, or obtain a loan for Maxey to pay Citizens; that his company proposed to purchase the Maxey ranches for $4,-500,000.00 paying $3,400,000.00 cash; that he attempted to get short term financing and also a permanent loan on the ranches; that the short term funds were to be used to pay off the Citizens Bank and furnish Maxey with some operating capital; that the long term loan was sought to pay off the short term and have additional capital; that the amount of the sought short term loan was $1,300,000.00 and the long term $3,400,000.00; that such a loan commitment was obtained and Maxey was so advised by telegram, but that Maxey never accepted the offer; that Drumwright's co-worker, Frese, notified him the loan commitment had been cancelled because the loan was no longer needed because a Lubbock bank was making the loan. Defendants also attached the deposition of Jones and Evans of the law firm charged as parties to said alleged conspiracy; they also attached the deposition of W. L. Brady. Brady testified he talked to the insurance company and made "take out" commitments and to Wakefield; that Wakefield told

him Maxey wanted a loan of $1,300,000.00 to be secured by Maxey's equities in ranches and cattle; that they were considering terms, analyzing financial statements and conditions of the security when they were informed that the loan had been arranged for elsewhere; that he received a call from attorney Jones of Lubbock stating that Citizens was going to make the loan and asking him to return all brochures and information; that Jones called and informed Brady "that the bank was making the loan to Homer Maxey and for us to return all papers"; that Jones told him he was the attorney for both Citizens and Maxey and a director of said bank, and Jones gave him a receipt for the papers he returned. It is apparent that none of this evidence connected Irish or Hinn with the conspiracy alleged by plaintiffs. At the conclusion of the hearing of Irish and Hinn's motions for summary judgment the court sustained them and rendered judgment for Irish and Hinn. Plaintiffs have appealed.

The case of Maxey et al. v. Rodman et al., 444 S.W.2d 353, (ref. n. r. e.) was a part of the same original suit, as this case, in which those appellees were sued as directors. Those directors filed affidavits similar to those of Irish and Hinn. The summary judgment for said directors was affirmed by the El Paso court. It held that the affidavits of said defendants-directors, although they were interested defendants, were sufficient to support their motions for summary judgment. It stated the record was bare of any evidence connecting said directors with anything about which the plaintiffs complained; that they were only directors of the bank; that the facts which entitled the moving parties to prevail having been established by affidavits, depositions or admissions, their motions for summary judgment would not be denied merely because plaintiffs had alleged matters which, if proved, would require a different judgment, citing Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948. It held that said defendant-directors were

not liable merely because they were directors; that to establish their liability proof was required that they participated in the wrong; that, as directors, said defendants were not liable for the acts of other directors and officers, unless they were personally connected with and participated in their wrongful acts. The opinion in Maxey et al. v. Goad, Tex.Civ. App., 451 S.W.2d 763, was another splinter from the original suit and was a suit against Goad as a director. Like the present suit against other directors, Goad was not shown to have participated in the alleged wrong. The San Antonio court affirmed a summary judgment for director Goad.

Appellants say the record in this case is different from that in said El Paso and San Antonio cases, in that, there are affidavits and oral depositions and answers to interrogatories propounded to appellees here that were not in said cases. They do not point out said new matters in detail. We have examined all such instruments and find nothing therein raising a fact issue as to the liability of Irish or Hinn for the acts for which plaintiffs seek damages. Appellants did amend their petition and seek to recover damages from Irish and Hinn because of their alleged negligence as directors in not learning of and preventing the acts causing plaintiffs' damages.

■ Directors are not ordinarily liable for such alleged negligence. 9 C.J.S. Banks and Banking § 131 p. 259. In K & G Oil Tool & Service Company v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782, 793, it was held that a director was not liable for the fraud of other officers of a corporation, unless he was personally connected with the wrong and participated in it. In Sutton v. Reagan & Gee, Tex.Civ.App. 405 S.W.2d 828, (ref. n. r. e.), it was held that the wrongful act of one officer of a corporation in converting plaintiffs' property did not create personal liability of another officer, who did not participate in the wrongful

act and had no knowledge thereof. See also Belo v. Fuller, 84 Tex. 450, 19 S.W. 616, 617.

■ The uncontradicted affidavits of appellees, though they were interested defendants, were clear, direct and positive and there were no circumstances in evidence tending to discredit or impeach them, which could readily have been done had they been false. Therefore, the court did not err in giving them conclusive effect and rendering summary judgment for appellees. Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Company, (Sup.Ct.), 391 S.W.2d 41, 47; Cochran v. Wool Growers Central Storage Company, 140 Tex. 184, 166 S.W.2d 904, 908. Under the circumstances, the burden of going forward with the evidence shifted to plaintiffs and they were required to produce summary judgment proof which would raise an issue as to a material fact, or justify their inability to do so. In Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500, the court said:

"When a motion for summary judgment is supported by affidavits, depositions, stipulations or other extrinsic evidence sufficient on its face to establish facts, which if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so * * *"

See also Allen v. Western Alliance Insurance Co., 162 Tex. 572, 349 S.W.2d 590, 594. In their attempt to produce summary judgment evidence to raise a fact issue appellants merely filed sworn pleadings, introduced the deposition of Jones, who said he was an attorney for the bank and Maxey and that he interrupted appellants' efforts to borrow the money and appellees' answers to certain interrogatories. None of this evidence controverted appellees' definite sworn denial of any knowledge of or participation in any transaction where-

by appellants' refinancing was interfered with, or connected appellees with the acts for which appellants seek damages, unless appellees are liable simply because they are directors of the bank. They are not. Appellants did not show any dealings with appellees. They did not come forward with summary judgment evidence controverting said definite verified facts showing nonliability of appellees. Appellants' pleadings did not supply such lack of evidence. We think it is unnecessary to reiterate the details sworn to by appellees. Although some of their statements may have been conclusions, ample material facts to which they could testify were sufficiently and definitely sworn to establishing the nonliability of appellees. Appellants themselves testified that they did not know of any wrong committed by these appellees, nor had they heard of any. Under the circumstances, we conclude that the court did not err in rendering summary judgment for appellees. Texas & Pacific Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652, 654.

There was no evidence of a knowing violation of the National Banking act. 12 U.S.C.A., Sec. 93; Yates v. Jones National Bank, 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed. 1002. There was no evidence of any fraudulent, negligent or wrongful act participated in by appellees. There was no evidence that appellees were parties to the alleged conspiracy. The judgment is affirmed.

## ON APPELLANTS' MOTION FOR REHEARING AND APPELLEES' MOTION TO CORRECT STATEMENTS IN THE OPINION

Appellants' motion for rehearing has been carefully considered and is overruled. Appellees have moved to correct certain alleged misinterpretation of facts in our opinion with reference to Jones and Evans. Jones and Evans are not parties to this case. Appellants have made no contest of appellees' said motion. We therefore withdraw all statements in the opinion to the effect that depositions of Jones or Evans were introduced or that Jones interrupted in any manner any loan transactions initiated by appellants.