In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00122-CV


______________________________




BROOKSHIRE GROCERY COMPANY,


d/b/a BROOKSHIRE'S FOOD STORES, Appellant



V.



MARY FRANCES TAYLOR, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 68,718




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 This is a slip and fall case Mary Frances Taylor filed against Brookshire Grocery
Company, d/b/a Brookshire's Food Stores. Both parties filed motions for summary
judgment. The trial court granted Taylor's motion for partial summary judgment on the
issue of liability, but denied Brookshire's no-evidence motion for summary judgment. A trial
was held to determine damages only, and the jury awarded Taylor $103,667.65. 
Brookshire raises the following issues on appeal: (1) Did Taylor establish the elements of
premises liability as a matter of law? (2) Is the affidavit of Dewayne Jenkins some evidence
of ordinary care by Brookshire which creates an issue of material fact, thereby defeating
Taylor's motion for partial summary judgment? and (3) Did Taylor produce some evidence
of constructive knowledge of a dangerous condition in response to Brookshire's
no-evidence motion for summary judgment? 

 Taylor slipped and fell on a wet substance in the delicatessen (deli) section of the
Brookshire store. The fall injured Taylor's left knee, requiring surgery the next day. Taylor
testified in deposition she did not know how the substance got on the floor, who put it
there, or how long it had been there. But, two Brookshire employees, the assistant
manager and a deli worker, testified by depositions that after the fall they saw a puddle of
water. The assistant manager also said he saw a partially melted ice cube in the puddle. 
There was a Coke dispenser in the area of Taylor's fall. The deli employee testified that
the dispenser caused ice to fall on the floor on a daily basis and that the employees had
to clean it up. She testified that "little kids are going to spill ice" and agreed that even
adults are prone to spill ice from time to time. 

 The surface of the floor in this Brookshire store is tile. The support for the Coke
dispenser rested on the tile floor. There was one rectangular mat, approximately three feet
wide, lying on the floor, parallel with the front of the support for the Coke dispenser. Facing
the dispenser, the right edge of the mat lined up evenly with the right edge of the support
for the dispenser, and there were two similar mats, lying end to end, to the right of the
Coke dispenser, parallel with the front of the deli. Deposition testimony showed there was
a gap of exposed tile floor between the mat in front of the Coke dispenser and the other
two mats. The puddle of water where Taylor fell was on the tile floor just past the mat in
front of the dispenser. Brookshire's assistant manager agreed that the store could have
put an additional mat to cover the gap of exposed tile between the existing mats and that
it could have also put an additional mat in front of the Coke dispenser, making it harder for
fallen ice to get to the tile floor. The store manager testified that the store could have used
warning signs in this area and that the idea of relocating the Coke dispenser to the center
of the counter, so that it would be more to the middle of the mat, "really makes sense." 
Taylor contends the Coke dispenser was a dangerous condition because it was improperly
placed with inadequate matting and no warning signs. 

 An invitee enters onto another's land with the owner's knowledge and for the mutual
benefit of both parties. Rosas v. Buddie's Food Store, 518 S.W.2d 534, 536 (Tex. 1975). 
A premises owner owes an invitee a duty to exercise reasonable care to protect such
invitee from dangerous conditions in the store if the conditions were known or discoverable
to the owner. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). When
an owner has actual or constructive knowledge of any condition on the premises that poses
an unreasonable risk of harm to an invitee, such owner has a duty to take whatever action
is reasonably prudent under the circumstances to reduce or eliminate the unreasonable
risk. Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983). 

 This duty toward the invitee, however, does not make the owner an insurer of the
invitee's safety. Gonzalez, 968 S.W.2d at 936. To prevail under a premises liability claim,
an invitee must prove (1) actual or constructive knowledge of some condition on the
premises by the owner/operator; (2) that the condition posed an unreasonable risk of harm;
(3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk;
and (4) that the owner/operator's failure to use such care proximately caused the plaintiff's
injuries. Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). 

 The two parties in this case disagree about what should be defined as the
dangerous condition. Taylor complains Brookshire has "inaccurately limited the definition
of 'dangerous condition' to include only the particular melted ice cube on which Mrs. Taylor
fell." Taylor asserts that the primary basis for her negligence claim is that "Brookshire's
created the dangerous condition - a Coke dispenser with inadequate matting, improper
placement and no warning signs - that was regularly causing ice to fall on the tile floor,
posing a danger to customers." From Taylor's perspective, the Coke dispenser was the
dangerous condition; from Brookshire's point of view, the puddle was the dangerous
condition. 

 The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). Where the motion is supported
by affidavits, depositions, and other extrinsic evidence sufficient on their face to establish
facts which, if proven at trial, would entitle the movant to an instructed verdict, the
opponent must show opposing evidentiary data which will raise an issue as to a material
fact, or must justify its inability to do so and seek appropriate protection. Allen v.
W. Alliance Ins. Co., 162 Tex. 572, 349 S.W.2d 590, 594 (1961). In deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable
to the nonmovant must be taken as true, and every reasonable inference must be indulged
in favor of the nonmovant and any doubts resolved in its favor. Nixon, 690 S.W.2d at
548-49. The Texas Supreme Court has said a slip and fall plaintiff satisfies the notice
element of a claim by establishing that (1) the defendant placed the substance on the floor,
(2) the defendant actually knew the substance was on the floor, or (3) it is more likely than
not the condition existed long enough to give the premises owner a reasonable opportunity
to discover it. Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002). 
Brookshire contends Taylor produced no evidence of its actual knowledge of the specific
water on the floor at the time of the accident or of how long the water was actually on the
floor. 

 If a plaintiff relies on circumstantial evidence to prove constructive knowledge of a
dangerous condition, then the Texas Supreme Court has required that the evidence
establish it is more likely than not the dangerous condition existed long enough to give the
proprietor a reasonable opportunity to discover the condition. Gonzalez, 968 S.W.2d at
936. 

 In Reece, the court reaffirmed the importance of the "time-notice rule" as the best
indicator of whether the owner had a reasonable opportunity to discover and remedy a
dangerous condition; without some temporal evidence, there is no basis on which the
fact-finder can reasonably assess the opportunity the premises owner had to discover the
dangerous condition. Reece, 81 S.W.3d at 816. In this case, there was no evidence of
how long the water had been on the floor; therefore, Brookshire contends Taylor failed to
establish the temporal element of constructive knowledge, which causes Taylor to fail in
establishing the knowledge element of premises liability, making summary judgment
inappropriate. 

 Taylor, on the other hand, contends the placement of the Coke dispenser on the
floor with inadequate matting around it, and with no warning signs, was the dangerous
condition, not just the particular piece of ice on the floor. Brookshire acknowledges adding
additional mats and moving the Coke dispenser to the middle of the counter would make
it much more unlikely that ice would get on the tile floor. The deli employee acknowledged
in her deposition that, had there been another layer of mats in place at the time of Taylor's
fall, the ice would have been on the mat instead of the tile floor. Moreover, the deli
employee said Brookshire employees had to clean up ice from the floor on a daily basis. 
Even so, there were no warning signs in the area. Taylor contends the evidence
establishes that the melted ice on which Taylor fell came from the Coke dispenser in
question and that Brookshire knew this specific machine was causing a specific risk in the
deli area because of the ice falling on the floor. 

 In Corbin, the Texas Supreme Court made clear that, in a slip and fall case, the
dangerous condition can be defined more broadly than the particular substance on the
floor. Corbin, 648 S.W.2d at 296. In Corbin, the invitee slipped and fell on a grape that
had fallen from a self-service grape display. Id. at 294. Safeway admitted it knew of the
unusually high risk associated with its grape display: an open, slanted bin above a green
linoleum tile floor. Id. at 296. But, Safeway argued it was not obligated to protect
customers from the acts of other customers in causing grapes to fall to the floor, regardless
of whether those acts were foreseeable. Id. The Texas Supreme Court disagreed with
Safeway's assertion that the only duty it owed its customers was to pick up whatever
objects it found or should have found on the floors of the store. Id. The court further
stated that the foreseeability of the harmful consequences resulting from the particular
conduct is the underlying basis for liability in all negligence actions. Id. Corbin's right to
recover depended on showing that Safeway had knowledge of the foreseeable harm of
some course of conduct or method of operation. Id. The court did not require Corbin to
prove one particular instance of negligence or knowledge of one specific hazard. Id. 

 Brookshire, on the other hand, focuses on Reece, asserting the facts of that case
are "nearly identical" to the facts in this case. Here, as in Reece, a customer slipped in a
puddle of water, allegedly from ice that fell from a drink dispenser. Reece, 81 S.W.3d at
813. In both cases, the store was not actually aware of the particular ice cube. Id. at 814. 
In both cases, the stores acknowledged an increased risk caused by the drink machines. 
Id. Brookshire emphasizes that, in Reece, the court said the increased risk of the
likelihood of spills in a self-service beverage area did not relieve the plaintiff from the
burden of proving the elements of premises liability. Id. at 817. 

 We agree the factual events of these two cases are similar. However, there are
issues before this Court in the instant case that distinguish it from the issues before the
Texas Supreme Court in Reece. In Reece, the issue was whether evidence that a store
employee was in close proximity to the dangerous condition right before the fall was legally
sufficient to charge the defendant with constructive notice of the dangerous condition. Id.
at 813. In this case, Taylor contends the dangerous condition was the placement of the
Coke dispenser without adequate matting around it; she makes no contentions regarding
the proximity of the store employees to the place where she fell. We believe that, with
respect to issues, this case is more analogous to Corbin than Reece because the issue
here is whether liability attaches, not because of a particular substance on the floor or
because of the proximity of the store employees to the puddle, but because of an alleged
unreasonably dangerous method of display that frequently caused melting ice to become
a floor hazard. This is much more like the allegations about the grape display in Corbin. 

 We recognize, as did the Texas Supreme Court in Corbin, that slip and fall cases
usually arise when a customer slips on a food item dropped on the floor; in the typical
case, the only dangerous condition alleged is the specific food item on the floor. Corbin,
648 S.W.2d at 297. However, in this case, Taylor has alleged the placement of the Coke
dispenser was the dangerous condition, not just the particular melted ice on the floor. The
deli employee admitted ice fell on the floor from the Coke dispenser on a daily basis, and
Brookshire acknowledged ice fell beyond the area where it had placed mats. Therefore,
regardless of knowledge of this particular piece of melted ice on the floor, Brookshire knew
the danger its Coke dispenser posed to its customers. 

 Brookshire contends that, even if this Court finds the premises defect to be analyzed
as Taylor contends and not as the specific water on the floor, Taylor cannot prevail on
summary judgment because she produced no evidence that these conditions were
"unreasonably dangerous conditions" and produced no evidence that these conditions
were the cause in fact of Taylor's fall. Brookshire asserts that whether something is an
unreasonable risk should be a question for the jury. "A condition presenting an
unreasonable risk of harm is one in which there is such a probability of a harmful event
occurring that a reasonably prudent person would have foreseen it or some similar event
as likely to happen." Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 341 (Tex.
App.-Austin 2000, pet. denied), quoting Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d
752, 754 (Tex. 1970). Here, the deli employee said ice fell on the floor daily. She said
they cleaned the water from the floor "[s]o things like this don't happen" and agreed that
water on a tile floor poses a danger to the customers if left there. She also admitted ice
caused a hazard in the store on a daily basis. Moreover, it was undisputed the matting
Brookshire had in place was inadequate. The ice was still falling on the floor on a daily
basis. All this evidence offered by Taylor proved the probability of a harmful event
occurring in this deli area was such that a reasonably prudent person would have foreseen
it or some similar event as likely to happen.

 Proximate cause consists of cause in fact and foreseeability. Id. at 343. A
defendant's negligence is a cause in fact of the plaintiff's injuries if the negligent act or
omission was a substantial factor in bringing about the injury, without which the harm would
not have occurred. Id. In this case, the store manager said he had no reason to believe
Taylor fell on anything other than the ice cube, and the deli employee testified she
assumed the water or ice on the floor came from the Coke dispenser in that area. 
Brookshire asserts in its reply brief it was possible the ice came from a customer's cup, not
the Coke dispenser. On appeal, the nonmovant can always attack the legal sufficiency of
the evidence offered to prove entitlement to summary judgment, but if the existence of a
fact issue is to be the basis of the nonmovant's complaint on appeal, the nonmovant has
the burden to present summary judgment proof to establish that fact issue at the trial level. 
See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The
movant does not have to negate all possible issues of law and fact that could be, but were
not, raised by the nonmovant in the trial court. Id. at 678-79. The only evidence about ice
falling on the floor from any source other than the Coke dispenser was the deli employee's
testimony that "little kids are going to spill ice" and where she agreed that even adults are
prone to spill ice from time to time. This, however, is no more than a scintilla of evidence
the ice that caused Taylor's fall came from such sources. All the other summary judgment
evidence, albeit circumstantial, is conclusive that the melting ice which caused Taylor's fall
originated with Brookshire's Coke dispenser. Brookshire failed to establish a fact issue on
this point. 

 As its second point of error, Brookshire contends the affidavit of Dewayne Jenkins,
the assistant store manager, was sufficient to defeat Taylor's motion for summary
judgment. Brookshire contends this affidavit was evidence that Brookshire had in place
policies and procedures that, in the exercise of ordinary care, seek to allow the discovery
of hazardous conditions on a reasonably prompt basis. Brookshire asserts this evidence
contradicts the third element of a premises liability claim: that the owner/operator did not
exercise reasonable care to reduce or eliminate the risk. Jenkins' complete affidavit is as
follows:

 On July 27, 2000, I was employed as Assistant Manager for
Defendant Brookshire Grocery Company. I was employed at store #14 in
Paris, Texas. Prior to Mrs. Taylor's fall, store personnel were not aware of
any complaint of melted ice on the floor in the deli area or any other
hazardous condition near that area. No prior complaints had been made. 


 Brookshire Grocery Company, and specifically store #14, has in place
policies and procedures that in the exercise of ordinary care seek to allow
the discovery of hazardous conditions on a reasonably prompt basis. In this
regard, each and every store employee is trained to engage in "constant
visual inspection" of the premises during the conduct of their job duties. In
addition, regular full inspections of the floors are performed several times
each day by a member of the management staff so as to further reduce, in
the exercise of reasonable care, the risk of harm presented by hazards that
may arise.


This affidavit might be some evidence of care by Brookshire if the only duty it owed its
customers was to pick up whatever objects it found on the floor. However, such a limited
duty has been specifically rejected by the Texas Supreme Court. Corbin, 648 S.W.2d at
296.

 In deciding whether a material fact issue precludes summary judgment, the court
takes as true all summary judgment evidence favoring a nonmovant and resolves all doubt
and reasonable inferences in the nonmovant's favor. Nixon, 690 S.W.2d at 548-49. Even
with all reasonable inferences made in Brookshire's favor, this affidavit provides no
evidence of reasonable care regarding the alleged dangerous condition in this case, a
Coke dispenser with inadequate matting around it. 

 As the Texas Supreme Court stated in Corbin, the store owner's liability to its invitee
depends on its knowledge of store conditions posing risks to customers and the failure to
act reasonably in response to those risks, not on the failure to comply with a company
policy. Corbin, 648 S.W.2d at 297-98. The record in the instant case contains evidence
that ice from the Coke dispenser fell on the floor on a daily basis and that Brookshire
employees had to clean the water from the floor "[s]o things like this don't happen." Yet,
Brookshire provided no evidence, including this affidavit, of why it failed to remedy this
condition or warn customers of the danger. Accordingly, Brookshire's second point of error
is overruled.

 Brookshire also contends the trial court erred by not granting its no-evidence motion
for summary judgment. Based on this error, Brookshire asks this Court to reverse and
render judgment in its favor, as opposed to reversing and remanding for trial. Brookshire's
motion asserted Taylor could produce no evidence of actual or constructive knowledge by
it of a dangerous condition as required by the elements of a premises liability cause of
action. We agree Taylor did not produce evidence of knowledge of the particular piece of
melting ice on the floor that caused her fall. However, the Texas Supreme Court has
recognized that a storekeeper may be liable for any dangerous premises condition about
which such storekeeper should be aware, not just for specific objects left on the floor. Id.
at 298. Taylor alleged the placement of the Coke dispenser without adequate matting was
the dangerous condition, not just the particular piece of melting ice on the floor. Moreover,
after making such allegation, Taylor produced evidence of Brookshire's knowledge of this
dangerous condition: the testimony of the deli employee that ice from the Coke dispenser
fell on the floor on a daily basis. Accordingly, this point of error is overruled. 

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: January 15, 2003

Date Decided: March 5, 2003




-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-046-CV%20In%20re%20Bonnie%20Allen-Pieroni%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00046-CV

                                                ______________________________

 

 

 

                                                                        IN
RE:

BONNIE
ALLEN-PIERONI

 

 

                                                                                                  


 

                                                                                                                            


                                                  Original
Habeas Corpus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Bonnie Allen-Pieroni and Marc John
Pieroni were divorced in 2009 and were named joint managing conservators of
their three children.  By its order dated
March 22, 2011, after finding 
Allen-Pieroni in contempt for violating the standing child-possession
orders[1]
on fourteen different occasions stretching from July 12, 2010, through January
10, 2011, the trial court ordered Allen-Pieroni confined for seven separate twenty-four-hour
periods, one for each of the seven violations admitted by Allen-Pieroni, and
ordered a single, separate suspended sentence for the other violations, the
ones which Allen-Pieroni denied committing. 
By application for writ of habeas corpus,[2]
Allen-Pieroni complains that she was not admonished at the contempt hearing
concerning her rights, that she was improperly ordered to pay attorneys fees,[3]
and that the appointed amicus attorney harmfully testified using confidential
information belonging to her.  Because
Allen-Pieroni has not demonstrated herself entitled to such relief, we deny her
application.

            Allen-Pieronis original habeas
corpus proceeding in this Court is a collateral attack on the contempt
order.  Ex parte Dustman, 538 S.W.2d 409, 410 (Tex. 1976).  Therefore, Allen-Pieroni may be granted
relief from that order only if it is void. 
Id.; Ex parte Thetford, 369 S.W.2d 924, 925 (Tex. 1963); Ex parte Scariati, 988 S.W.2d 270, 272
(Tex. App.Amarillo 1998, orig. proceeding). 
When collaterally attacked in a habeas corpus proceeding, a judgment is
presumed valid until the relator has discharged the burden showing
otherwise.  In re Brown, 114 S.W.3d 7, 9 (Tex. App.Amarillo 2003, orig.
proceeding); Ex parte Occhipenti, 796
S.W.2d 805, 80809 (Tex. App.Houston [1st Dist.] 1990, orig. proceeding).

            Allen-Pieroni has the burden to
present to this Court a sufficient record to support her claim for relief.  See
Ortiz v. State, 144 S.W.3d 225, 22930 (Tex. App.Houston [14th Dist.]
2004, pet. refd).  Without having before
us a complete record, we presume that the record contains information demonstrating
a lack of error.  In re Lau, 89 S.W.3d 757, 76061 (Tex. App.Houston [1st Dist.]
2002, orig. proceeding); see Applewhite
v. State, 872 S.W.2d 32, 33 (Tex. App.Houston [1st Dist.] 1994, no pet.).

            In this casethough she indicated in
her application a desire to provide us at least some part of the reporters
record, and we specifically gave her an opportunity to do soAllen-Pieroni has
provided us no record of the proceedings. 
Instead, she relies on two affidavits, one by her counsel and one by
Allen-Pieroni herself, each affidavit labeled as a bystanders bill, attached
to the application as evidence.  Rule
33.2(c)(3) of the Texas Rules of Evidence provides a procedure traditionally
referred to as a Bystanders Bill of Exception, which enables a party to
develop a record and place an issue before an appellate court when the partys
version of events differs from that of the trial court.  Tex.
R. App. P. 33.2(c)(3); see
Thieleman v. State, 187 S.W.3d 455, 457 n.2 (Tex. Crim. App. 2005); Bryan v. Watumull, 230 S.W.3d 503, 516
(Tex. App.Dallas 2007, pet. denied). 
Because Allen-Pieroni has not argued or shown that her situation fits
within the scope of the rule, the attempted use of a bystanders bill is
improper to act as a replacement for a record. 
With an insufficient record before us, we will provide no relief.  In re
Mott, 137 S.W.3d 870 (Tex. App.Houston [1st Dist.] 2004, orig. proceeding);
see Tex.
R. App. P. 52.3(k)(1)(A).

            We deny habeas corpus relief.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          May 4, 2011

Date
Decided:             May 5, 2011

 

 

 











[1]It
appears that both of the ex-spouses had filed motions for enforcement and
contempt.  No finding was made, or relief
provided, against the ex-husband, but the trial court granted the motion to
enforce filed by the ex-husband, and held relator in contempt for failing to
obey a series of orders of the court. 
The order sets out the violations in detail.  The fourteen violations listed in the order
each have to do with specific violations of the terms of access and possession
of the children as had been previously ordered by the trial court.  The court found her in contempt, found that
she admitted seven of the violations, and that she had the ability to comply
with those orders.

 





[2]This Court has
original jurisdiction over a habeas proceeding in this situation.  Tex.
Govt Code Ann. § 22.221(d) (Vernon 2004).  This application was filed at 11:00 a.m.,
Friday, April 15, 2011, less than twenty-four hours before the start of the
second period of confinement.

 





[3]The
issue urged relative to attorneys fees is irrelevant to Allen-Pieronis effort
to gain release from confinement under the order of contempt.  It will not be considered in this matter.