**CENTRAL SURETY & INSURANCE COR-PORATION, Appellant,**

v.

**John L. ANDERSON et ux., Appellees.**

**No. 16996.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 28, 1969.

Rehearing Denied March 28, 1969.

Shannon, Gracey, Ratliff & Miller, and Robert D. Wilkes, Fort Worth, for appellant.

Garrett, Garrett & Callaway, and Rufus S. Garrett, Jr., Fort Worth, for appellees.

OPINION

RENFRO, Justice.

On June 23, 1966, suit No. 44840–C was filed in the 153rd District Court by Dr. James C. Anderson, as next friend for his minor daughter, Sarah Katherine, against the minor's grandparents, John L. and Sarah Virginia Covert Anderson. The petition alleged that the minor child was badly burned in the kitchen of the John Anderson home as a result of three specific acts

of negligence on the part of the child's grandmother, the defendant, Sarah Virginia Covert Anderson.

The above case has never been tried and is still pending in the 153rd District Court.

On July 26, 1966, the John Andersons (defendants in the suit in the 153rd District Court) filed suit No. 45329–C in the 96th District Court, in which they prayed for a declaratory judgment holding Central Surety & Insurance Corporation owed them the duty of defending them in the suit in the 153rd District Court and was obligated to pay any judgment recovered against them in said suit.

Defendant Central Surety & Insurance Corporation denied that the John Andersons were covered by the policy for the character of action brought against them in the 153rd, and, further, it owed no duty to defend the John Andersons because of their failure to give notice of the alleged injury as soon as was practicable.

Judgment was entered for the John Andersons in which the court held that defendant has the obligation "to defend Plaintiffs . . . against any claims or suits arising out of the said accident (set out in paragraph one of this opinion), and that Defendant owes to Plaintiffs the obligation to pay any judgment arising out of the said accident, injuries, or damages sustained, as a result thereof."

In three points of error defendant argues that the court erred in rendering judgment for the plaintiffs because plaintiffs failed to give notice of the accident to defendant "as soon as practicable" as required by the policy.

The parties presented to the trial court a comprehensive Stipulation of Facts. The stipulations, in summary, are: The policy in question was in effect on the date the accident occurred in the Anderson home; the grandchild was badly burned as a result of the grandmother's alleged negligence in allowing a pot of cooking beans to overturn on the child; the policy is an Owners' Landlords' and Tenants' Liability Policy, naming as Insured—The Fort Worth National Bank in Fort Worth, Texas in its individual capacity as Trustee "of any of the properties covered by this policy as per schedule of certificates attached"; Sarah Anderson was a beneficiary under a trust administered by the Bank which covered the premises at 3808 Hilltop Road, where Sarah resided; policy period ran from August 27, 1960 to August 27, 1963; on October 13, 1960, Bank, Trustee, mailed a statement to beneficiary Sarah Anderson covering transactions concerning the trust which showed a policy of liability insurance had been obtained on the Hilltop Road premises at a cost of $9.52 to the trust and paid to Glen-Walker, Collett & Rigg; the accident occurred January 13, 1963; approximately six weeks thereafter Andersons talked to a vice president and trust officer of the Bank, who informed them no insurance was provided by the Bank for that type of accident; the plaintiffs relied on such representations; about November 7, 1965, plaintiffs visited attorney Rufus Garrett, Jr., for the purpose of employing him to see about the possibility of removing the Bank as trustee, one reason for removal was Bank's failure to provide insurance; that same day Garrett discovered that the policy in question was in force at the time of the accident, and on that day he orally notified an agent of William Rigg Co. of the accident, followed by written notice to the Company on November 10. Defendant was notified of accident by General Adjustment Bureau on November 17.

By deposition, Mrs. Anderson testified: her husband, John, had just returned from the hospital the day before the accident on a trial basis to see if he could avoid another operation for bleeding ulcer; it was six weeks after the accident before she went to the Bank to inquire about insurance because "(granddaughter) was in the hospital about six weeks and he (husband) was in bed a month, and I got phlebitis in my foot and they put me to bed for a week * * *"; during that time the grandchild was

in serious condition; the Bank did not give her a certificate showing she had any insurance, and she had no knowledge of any insurance; she took the trust officer's word that she had no insurance.

Plaintiff John Anderson testified as far as he knew there was no insurance at all, and when told by the Bank there was no coverage he did not question the matter any further.

At the request of defendant, the court filed Findings of Fact and Conclusions of Law.

The findings for the most part followed the stipulations, and in addition the court found Sarah Covert Anderson was an "additional insured" under the policy, plaintiffs were not negligent in failing to ascertain the existence of insurance coverage sooner than they did, and that plaintiffs gave notice of the occurrence as soon as practicable under the circumstances.

The trial court concluded as a matter of law that the insurance covered liability of plaintiffs for the occurrence in question, and that all conditions precedent to the liability of defendant to defend plaintiffs against the claim pending in the 153rd, and to pay, to the extent of its applicable policy limits, any judgment arising out of the occurrence, have been performed or have occurred.

Notice of accident provision in the policy reads: "When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable." The policy also provided: "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy."

In support of its contention that notice was not given as soon as practicable, defendant cites: Allen v. Western Alliance Ins. Co., 162 Tex. 572, 349 S.W.2d 590; New Amsterdam Cas. Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56; Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95; Dunn v. Travelers Indemnity Co., 5 Cir., 123 F.2d 710; Capital Rental Equipment Co. v. Pacific Indemnity Co., D.C., 193 F.Supp. 897; National Surety Corp. v. Diggs, Tex.Civ.App., 272 S.W.2d 604; State Farm Mutual Automobile Insurance Co. v. Hinojosa, Tex.Civ.App., 346 S.W.2d 914; Houck v. State Farm Mutual Automobile Insurance Co., Tex.Civ.App., 394 S.W.2d 222.

In *Allen* the court held as a matter of law failure to give notice of a medical claim for 107 days was not notice, "under the circumstances of this case," as soon as practicable.

The *Hamblen* policy required "immediate written notice" of accident, claim or suit. Accident occurred on February 13, 1937. First notice of claim or suit was given Insurance Company March 8, 1938. Jury found notice to Insurance Company was not given within a reasonable time. The court held that, failure to give notice of an accident or suit as soon as reasonably possible invalidates the claim for indemnity.

*Klein* was an "as soon as practicable" case. Thirty-two days after the accident the adjuster for the Insurance Company interviewed the insured. According to the Supreme Court, "There is no suggestion that he (insured) would ever have given such notice had he not been contacted by the adjuster. While the question of whether notice was given 'as soon as practicable' is ordinarily a question of fact, if, as in this case, the facts are undisputed, the question then becomes a question of law for determination by the court. It is our view that the courts below did not err in holding that, as a matter of law, Gunter failed to give the required notice 'as soon as practicable.' "

It was held in *Dunn*: "The communication of notice twenty-two months after the accident occurred was not 'as soon as practicable' unless, after a full investigation of the attendant facts and circumstances, an ordinarily prudent and reasonable man

would not have believed that the occurrence might give rise to a claim against the appellant."

*Capital Rental* held, where plaintiff's agent knew within two weeks after accident of defendant's policy, plaintiff was required to give notice to Pacific Indemnity " 'as soon as practicable.' This was not done and, as a matter of fact, there was a delay of more than two years and four months in giving any notice of this accident whatsoever. The court is of the opinion that this was a clear breach of the notice provision of the policy."

*Diggs* holds that "as soon as practicable" means within a reasonable time and depends on the individual facts and circumstances of each particular case; that unexcused delay of 104 days by insured in giving notice of accident was too late.

Notice by insured 40 days after the accident, merely because insured did not know he was supposed to report it "right away," was held in *Hinojosa* not given as soon as practicable as a matter of law.

In *Houck*, accident occurred July 2, 1962. Insured delayed giving notice until October 15, 1962 because the accident appeared to him very trivial and inconsequential in nature to the insurance company. It was held under "soon as practicable" clause notice was not given within a reasonable time.

■ The above cases, involving notice delays of 32 days to 2 years and 4 months respectively, make clear that an unexcused delay or delay because of a flimsy excuse entitles the insurance company to judgment as a matter of law since delays of that type violate the "soon as practicable" provisions and are deemed as not having been reasonably given, and reasonable time depends on the facts and circumstances of each particular case.

In Allstate Insurance Co. v. Darter, 361 S.W.2d 254 (Tex.Civ.App., 1962, no writ hist.), quoting with approval Appleman, Insurance Law and Practice, Vol. 8, p. 54, § 4738, it was held: " 'An additional insured * * * has been held to be a proper person to give notice to the insurer. Such additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby; * * *' and at p. 87, § 4745: 'An insured's lack of knowledge of the existence of insurance excused a delay in giving notice, as a matter of law, where he was not guilty of a lack of due diligence. And an additional insured was under no duty to give notice until he had knowledge that he was covered by the policy.' " The court concluded that under the facts and circumstances of that case a fact issue was presented as to whether the additional insured gave notice as soon as practicable.

■ In determining whether an additional insured has given notice within a reasonable time, all the circumstances are considered, including, but not confined to, age, experience, capacity for understanding and knowledge that coverage exists in one's favor.

The son, in National Surety Corp. v. Wells, 287 F.2d 102 (5th Cir., 1961) knew his father had insurance on the family automobile, but did not know that he was considered to be an additional insured. He failed to give immediate notice of a citation received following an accident. Noting that the son was not a named insured, the court held the son made "timely transmission of the process as soon as, with reasonable diligence for one of his maturity, he became aware of coverage in his favor."

One not a named insured, who notified the insurance company immediately upon discovery of the policy, acted within a reasonable time, Bachman v. Independence Indemnity Co., 112 Cal.App. 465, 297 P. 110, 298 P. 57 (4th Dist. Calif., 1931), upon the ground that what is a reasonable time depends upon the facts of each particular case; as "soon as practicable" means with-

in a reasonable length of time under all the circumstances. Gifford v. New Amsterdam Cas. Co., 216 Iowa 23, 248 N.W. 235 (1933).

An acceptable excuse restores the timeliness of notice. 18 A.L.R.2d 470, § 18.

In Updike Inv. Co. v. Employers Liability Assurance Corp., 131 Neb. 745, 270 N.W. 107 (1936), the court seems to apply the reasonable and prudent man test in determining reasonable time.

It has been held that what would be reasonable time in one case might be wholly inadequate to shut off the rights of parties in a different case or under different circumstances. Continental Cas. Co. v. King, 423 S.W.2d 395 (Tex.Civ.App., 1967, ref., n. r. e.) ; American Guardian Ins. Co. v. Rutledge, 404 S.W.2d 847 (Tex.Civ.App., 1966, no writ hist.).

■ Considering all the facts and circumstances of this particular case, we have concluded that the evidence and the law supports the trial court's finding that the plaintiffs gave notice of the occurrence in question as soon as practicable.

The first three points of error are overruled.

In its fourth point defendant contends the court erred in holding that the alleged accident was covered by the policy.

The policy provided: "1. Coverage A —Bodily Injury Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any, person, caused by accident and arising out of the hazards hereinafter defined."

The definition of hazards, "Division 1" reads: "The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto."

Under "Exclusions" it provides that "This policy does not apply (a) under divi-

sion 1 of the Definition of Hazards, and under division 3 except for operations performed by independent contractors, and under coverage C, to the ownership, maintenance, etc. * * *."

Defendant argues that because of the exclusions the policy does not apply except for operations performed by independent contractors, citing Traders and General Ins. Co. v. Edwards, 10 Cir., 216 F.2d 441 ; American Cereal Co. v. London Guarantee & Accident Co., 7 Cir., 211 F. 96 ; Producers' Lumber Co. v. Butler, 37 Okl. 172, 209 P. 738 ; Federal Mining & Smelting Co. v. Thomas, 99 Okl. 24, 225 P. 967 ; and other cases in support thereof.

■ The exclusions apply to "operations performed" by others than independent contractors, but do not apply by clear language or necessary implication to "use" of the premises by the insured or additional insured.

The trial court found: "The policy of insurance in question covered 'the ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.' * * * Considering that the premises consisted of a residence and the only use was its residential use, and that the accident arose out of the preparation of a meal, the accident arose out of the use of premises."

Use of the residence, particularly the kitchen, for preparing family meals is a long and commendable custom of the American housewife.

Cooking of beans in the home, in this day of condensed, frozen, canned and precooked foods, etc., etc., is particularly approved by many, many appreciative family members, especially the older generation who grew up in the pleasing aroma of home cooking.

■ Use of the bean pot or pan is a use of the premises, and we agree with the trial court that it is such use of the premises as contemplated in Coverage A.

The word "use" has been defined as that enjoyment of property which consists in its employment, occupation, exercise or practice. Jackson v. Sewell, 284 S.W. 197 (Springfield Ct.App., Mo.App., 1926).

■ If the words and expressions used in an insurance contract are susceptible of more than one meaning they must be construed favorably to the insured, 32 Tex. Jur.2d pp. 115–16, § 57; Travelers' Ins. Co. v. Scott, 218 S.W. 53 (Tex.Civ.App., 1919, ref.); Providence Washington Ins. Co. v. Profitt, 150 Tex. 207, 239 S.W.2d 379 (1951); and the purpose of an insurance contract being to furnish an indemnity against loss, the contract should be construed in such way as to effectuate that purpose, rather than in a way which will defeat it. American Bankers Ins. Co. v. Farley, 403 S.W.2d 545 (Tex.Civ.App., 1966, no writ hist.); Commercial Standard Ins. Co. v. Ford, 400 S.W.2d 934 (Tex. Civ.App., 1966, ref., n. r. e.).

■ The premises were used exclusively as a residence by plaintiffs. There was no point in the insured or additional insured having liability insurance unless they were protected in the use thereof. In our opinion that purpose was contemplated by the parties and was so written into the contract.

The trial court did not err in finding that the policy applied to the type of accident that occurred.

■ Perhaps, in view of the status of the tort suit, the state of the pleadings, the nature of the suit, the relationship of plaintiffs and defendant, and all the circumstances, the trial court should have done no more than declare defendant's obligation to defend, leaving the question of defendant's liability for any judgment rendered against the Andersons until after such time as the Andersons may have a judgment rendered against them in the 153rd District Court suit. Firemen's In-

surance Co. v. Burch, Tex., (T.S.C.J., Vol. 12, No. 2, October 11, 1968).

The defendant, however, does not attack the liability feature as being prematurely tried in this suit; hence, without further discussion, we affirm the judgment of the trial court.

Affirmed.