United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 29, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 05-50813

———————————

BEATRICE CROCKER,

Plaintiff-Appellee,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before GARWOOD, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:

This diversity case involves important and determinative
questions of Texas law as to which there is no controlling Texas
Supreme Court precedent. Accordingly, we certify those
unresolved questions to the Supreme Court of Texas.

>   CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS
>   FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS,
>   PURSUANT TO THE TEXAS CONSTITUTION ART. 5, § 3-C AND
>   RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I.  STYLE OF THE CASE

The style of the case in which this certification is made is *Beatrice Crocker v. National Union Fire Insurance Company of Pittsburgh, PA*, No. 03-10705, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Western District of Texas, San Antonio Division.  Federal jurisdiction is based on diversity of citizenship.

## II.  STATEMENT OF THE CASE

Plaintiff-appellee Beatrice Crocker (Crocker) seeks to recover from defendant-appellant National Union Fire Insurance Company of Pittsburgh, PA (National Union) on the basis of the default judgment that Crocker obtained against National Union's insured, Richard Morris (Morris).  In May 2002, Crocker sued Morris and Morris's former employer, Emeritus Corporation (Emeritus), for injuries suffered in 2000 when Crocker was struck by a swinging door — allegedly pushed negligently by Morris acting in the course and scope of his employment — at a nursing home, where Crocker resided, owned by Emeritus.[1]  Morris initially refused service of process but was eventually served in September 2002.  Crocker's claims against Emeritus were covered by the commercial general liability insurance policy issued by National Union in which

---

[1]The nursing home where the accident occurred was the Redwood Springs Nursing Home.  Morris was unaware that the Redwood Springs Nursing Home was owned by Emeritus and, in fact, Morris had never heard of Emeritus.

Emeritus was a named insured. Because he was an employee of Emeritus acting in the course and scope of his employment at the time of the underlying accident,[2] Morris was an additional insured under the terms of the National Union policy and was also entitled to defense and indemnity thereunder. National Union provided a defense for Emeritus but did not provide a defense for Morris, apparently because Morris failed to forward the suit papers to National Union or otherwise inform it of the suit against him and did not request it to provide a defense. Morris never answered Crocker's suit and Crocker moved for a default judgment on September 3, 2003. The case was called to trial on October 27, 2003, but Morris did not enter an appearance. At the conclusion of all the evidence, the trial court, on Crocker's motion, severed the claims against Morris into a separate suit before submitting the charge to the jury. On October 30, 2003, the jury rendered a take-nothing verdict against Crocker, specifically finding that Emeritus, acting through its agents, including Morris, was not negligent; the conditionally submitted damage question issue was not answered. On November 4, 2003, the trial court granted a default judgment for Crocker on the severed claims and entered judgment against Morris in the amount of $1,000,000. Sometime

---

[2]Morris's employment at the nursing home was terminated shortly after the accident resulting in Crocker's injuries and Morris was not an employee of Emeritus at the time of Crocker's suit.

3

shortly after November 4, the trial court entered final judgment on the jury's verdict in favor of Emeritus.

In April 2004, after both of the judgments had become final, Crocker sued National Union in state court as a third-party beneficiary of Emeritus's liability policy that covered Morris as an additional insured. National Union removed the case to federal court based on diversity of citizenship.

It is not disputed that Crocker's original claims against both Emeritus and Morris were covered by National Union's liability insurance policy and that National Union knew that Morris was a named defendant in the lawsuit. In addition, National Union knew or should have known that Morris had been served in the lawsuit.[3] It is also undisputed that Morris was not aware of the terms and conditions of the Emeritus policy, did not know that he was an additional insured under the policy, did not forward the suit papers to National Union or otherwise inform it that he had been sued, and did not request a defense from either National Union or Emeritus. Finally, it is undisputed that National Union did not inform Morris that he was an additional insured and did not offer to defend Morris against Crocker's claims.

---

[3]Although National Union claims that it did not have actual knowledge of the service of process on Morris, attorney Jonathan LaMendola, hired by National Union to defend co-defendant Emeritus, received Crocker's first amended petition ninety-six days before the default judgment and Crocker's motion for default judgment sixty-eight days before the default judgment. Both of these pleadings alleged that Morris had been served with process. After considering the summary judgment evidence, the district court concluded that "National Union had actual knowledge of the suit against Morris."

4

National Union did, however, attempt to contact Morris. National Union's claims investigator sent a certified letter to Morris (at the address where he lived) dated February 26, 2001 (prior to Crocker's lawsuit), expressing the investigator's desire to speak with Morris about Crocker's claims. The letter was returned unclaimed. In addition, well prior to the beginning of trail, an associate at the law firm hired by National Union to defend Emeritus attempted to reach Morris by telephone. On one such call, the associate was apparently told by Morris's ex-wife, with whom and in whose trailer home Morris lived, not to call again. None of the phone messages the associate left for Morris were returned. National Union admits, however, that none of these attempts to make contact with Morris included attempted notification to Morris that he was an additional insured or that National Union would provide Morris with a defense.

Jonathan LaMendola, lead counsel hired by National Union to defend Emeritus, was present on October 2, 2003, when Morris was deposed by Crocker's attorney. Prior to the deposition, Morris spoke in private with Crocker's attorney but refused to speak in private with LaMendola. When Morris's deposition began, LaMendola learned that Morris was not "comfortable" proceeding without a lawyer. LaMendola did not inform Morris that he was an additional insured or that National Union would provide Morris with a defense. In his affidavit, LaMendola stated: "I asked William [sic] Morris [before the deposition] if I could speak to him and he refused on

the basis that he was waiting for a call from his attorney. I assumed that William [sic] Morris had an attorney and did not want to talk to me on that basis."[4]

In Crocker's suit against National Union, both parties moved for summary judgment. National Union argued that Crocker, who stands in Morris's shoes, cannot recover under Texas law as National Union's duty to defend Morris was never triggered because Morris did not forward the suit papers to National Union or otherwise notify it that he had been sued and he did not ask or authorize National Union to defend him.[5] National Union relied on its policy provisions that:

> "Before coverage will apply, you must notify us in writing of any claim or suit against you as soon as possible. You must:

---

[4]Prior to the deposition, Crocker's attorney told LaMendola that Morris was waiting for a call from a lawyer. This information was true, but was apparently misinterpreted by LaMendola. Morris had not retained counsel to defend him against Crocker's suit, he had simply called his ex-wife's lawyer to find out if Crocker's allegations against him could lead to a prison term. This was the call from a lawyer that Morris was waiting for before the deposition.

[5]National Union also presented the following alternative summary judgment arguments: (1) National Union was prejudiced as a matter of law by Morris's breach of the policy's cooperation clause, namely by Morris's failure to tender his defense to National Union and by his failure to defend himself against Crocker's claims; and (2) National Union is not bound by the default judgment against Morris because Crocker's default judgment was not the result of an actual trial or a genuine contest of the issues as required by the policy. However, if National Union's position on the questions certified does not prevail, then these alternative arguments based on the policy conditions also cannot prevail. *See Gulf Insurance Company v. Parker Products, Inc.*, 498 S.W.2d 676, 679 (Tex. 1973) ("The insurance company may ordinarily insist upon compliance with this condition for its own protection, but it may not do so after it is given the opportunity to defend the suit . . . and refuses to . . . on the erroneous ground that it has no responsibility under the policy."). To the extent that National Union contends that the state court judgment that Crocker take nothing from Emeritus estops Crocker from recovery against Morris, or National Union as his insurer, that argument was not properly raised below and amounts to an impermissible collateral attack on Crocker's state court judgment against Morris.

6

" immediately record the specifics of the claim and the
  date you received it;

" send us copies of all demands, suit papers or other
  legal documents you receive, as soon as possible."

Crocker argued that National Union was not prejudiced by Morris's failure to forward the suit papers because National Union was aware of the lawsuit against both its named insured, Emeritus, and its additional insured, Morris, and National Union was on notice that Morris had been served. Thus, according to Crocker, because National Union breached its duty to defend Morris as a matter of law, it is liable to Crocker for the full amount of the default judgment. The district court agreed with Crocker, finding first that National Union failed to meet its burden under Texas law to show prejudice in order to assert a policy defense and therefore it had a duty to defend Morris, and also that National Union breached this duty by failing to notify Morris that it would defend the claims against him. The district court granted Crocker's motion for summary judgment and awarded Crocker $1,000,000. National Union appeals.

### III.  LEGAL ISSUES

A.  *Weaver v. Hartford Accident & Indemnity Company*

In 1978, the Supreme Court of Texas considered a case involving an additional insured that was apparently ignorant of the policy and did not excuse the additional insured's failure to comply with the policy's notice of suit provision. *See Weaver v.*

7

*Hartford Acc. & Indem. Co.*, 570 S.W.2d 367 (Tex. 1978). Weaver was injured in an accident in September 1969 with Busch while Busch was driving a truck owned by his employer, J.C. Thomas Enterprises (Thomas). *Id.* at 368. In March 1971, Weaver served Busch with process in a suit seeking damages of $11,800; Busch did not file an answer. In September 1971, Weaver amended his suit, increasing the damages sought to $201,800, adding Thomas as a defendant, and alleging that Busch was acting within the course and scope of his employment at the time of the accident. Although Thomas was served with the amended petition, Busch was not. Weaver subsequently non-suited Thomas, obtained a default judgment against Busch for $114,433.96, and sued Hartford — Thomas's liability insurer — alleging that Hartford was liable for the default judgment because Busch was an additional insured under the Hartford policy. Answering a special issue, the jury decided that Busch was an "insured" under the Hartford policy, and the court rendered judgment for Weaver for $100,000, which was Hartford's policy limit. Hartford appealed and the court of civil appeals reversed and rendered a take-nothing judgment. *Id.* The Supreme Court of Texas affirmed the court of civil appeals after noting that Busch failed to forward the suit papers and "because of Busch's statement . . . that he was not operating the vehicle with the permission of Thomas Enterprises, Hartford had no reason to believe that Busch expected Hartford to defend him." *Id.* at 369. The court stated

that the most "basic purpose" of the requirement that the insured forward suit papers to the insurer "is to advise the insurer that an insured has been served with process *and that the insurer is expected to timely file an answer*." *Id.* (emphasis added). In affirming the judgment for Hartford, the court concluded:

> "Under the facts of this case, Hartford would have been gratuitously subjecting itself to liability if it had entered an appearance for Busch, who had failed to comply with the policy conditions, who had stated he was not a permissive user, and who had never been served with process, in a suit which sought damages in excess of the policy limits. Therefore, we hold that Hartford had no duty to voluntarily undertake a defense for Busch." *Id.* at 370.

Although the majority opinion in *Weaver* does not explicitly address the additional insured's ignorance of his rights and duties under the Hartford policy, both dissenting opinions do. "[T]here [was] no showing that [Busch] had ever seen [the insurance policy], or was advised that he should do anything [to comply with it]." *Id.* (Greenhill, C.J., dissenting). Chief Justice Greenhill's dissent was based largely on his observation that "[t]he omnibus insured is really a stranger to the actual provisions of the written insurance policy." *Id.* Justice McGee's dissent included the same concern: "[T]here is nothing in the record . . . that would have led Busch to believe that there was a possibility of him being covered under the policy." *Id.* at 373 (McGee, J., dissenting). The issue of whether the insurer had a duty to inform the ignorant additional insured was apparently argued in *Weaver*:

9

> "At oral argument, Hartford took the stance that it was under no duty to inform Busch that he might be covered by the policy, although Hartford was apparently aware that Busch possessed a somewhat minimal education and might not have comprehended the extent of the coverage of an insurance agreement between his employer and the insurer." *Id.* (McGee, J., dissenting).

The *Weaver* majority did not directly address the dissenters' concerns regarding Busch's apparent ignorance of the policy combined with Hartford's knowledge of the suit, nor did the majority explicitly address the issue of whether Hartford was under a duty to inform Busch that he might be covered by the policy. Nonetheless, *Weaver* implicitly holds that such ignorance on the part of the additional insured does not excuse failure to comply with the policy's provision requiring notice of service of citation and also that an insurer has no duty to cure such ignorance, even when the insurer "has prompt and actual knowledge of the accident, notice of the accident from the named insured, and has the suit papers in hand giving the names of all the defendants, well in advance of trial." *Id.* at 370 (Greenhill, C.J., dissenting).

Justice McGee also disagreed with the *Weaver* majority's conclusion that the basic purpose of the notice provision is "to advise the insurer that an insured has been served with process and that the insurer is expected to timely file an answer." *Id.* at 372 (McGee, J., dissenting). Instead, Justice McGee would have held that "the main purpose of the [notice] provision . . . is to enable the insurer to control the litigation and interpose a defense

10

against any claims on the merits of the case," and that this purpose was satisfied in *Weaver* when the named insured forwarded the suit papers to Hartford. *Id.* This particular objection, however, unlike the ignorance-of-the-policy objection, was met directly by the *Weaver* majority:

> "Different purposes are served by the requirement that the insured immediately forward to the insurer 'every demand, notice, summons or other process received by him or his representative.' It is undoubtedly true, as some cases hold, that one purpose of the provision is to enable the insurer to control the litigation and interpose a defense. . . . However, *a more basic purpose is to advise the insurer that an insured has been served with process and that the insurer is expected to timely file an answer*." *Id.* at 369 (citations omitted) (emphasis added).

Emphasizing this "more basic purpose" of the notice provision, the *Weaver* majority focused on the fact that Hartford had no reason to think it was expected to defend Busch.[6]

---

[6]On this basis, *Weaver* (*id*. at 369) specifically distinguished the holding in *Employers Casualty Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 575 (Tex. 1972), that a prompt notice of accident policy provision was satisfied in respect to an additional insured by the named insured having given timely notice of the accident.

This "basic purpose" distinction between notice of accident and notice of suit or service of citation provisions may likewise distinguish opinions such as *Allstate v. Darter*, 361 S.W.2d 524 at 255 (Tex. Civ. App.–Fort Worth 1962, no writ), and *Central Surety & Insurance Corporation v. Anderson*, 446 S.W.2d 897 at 901 (Tex. Civ. App.–Fort Worth 1969, no writ), in each of which the court of appeals, in sustaining fact findings that an additional insured who was unaware of the coverage complied with the policy provision requiring giving notice of the accident to the insurer as soon as practicable, quoted with approval from Appleman, Insurance Law and Practice, Vol. 8, at p. 54, § 4738, "[a]n additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby" and at p. 87, § 4745, "An insured's lack of knowledge of the existence of insurance excused a delay in giving notice, as a matter of law, where he was not guilty of a lack of due diligence. And an additional insured was under no duty to give notice until he had knowledge that he was covered by the policy." *Darter* (at 256) and *Anderson* (at 901) likewise cite with approval this court's Texas law decision in *National Surety Corp. v. Wells*, 287 F.2d 102, 107-08 (5th Cir. 1961), where

11

If we applied the implicit holding of *Weaver* to the facts in this case, then Morris's ignorance of his rights and obligations under the policy would be no excuse for his failure to comply with the notice provisions, National Union would have had no duty to inform Morris of his rights and obligations as an additional insured, and National Union's actual and timely notice of the accident and the suit would not have satisfied the purposes of the notice provision because National Union did not know it was expected to defend Morris.[7]  However, changes in Texas insurance

essentially identical language from Appleman is cited in sustaining a fact finding that an additional minor insured, ignorant of coverage, complied with the policy's notice of accident provision.

We observe that the current version of Appleman, in Chapter 138, "Duty to Cooperate," also provides a relevant perspective:

"An insurer has the duty to exercise reasonable diligence to secure the assistance of its insured, including a request for assistance and reasonable efforts in attempting to locate him or her; when the insured is an additional insured and not a named insured, the insurer must show that the additional insured knew of the insurance coverage or that some reasonable effort was made to apprise him or her of the existence of the policy and its conditions."  Robert C. Clifford, Appleman on Insurance Law & Practice (2nd Ed.), § 138.9.

In *Dairyland County Mutual Ins. Co. v. Roman*, 498 S.W.2d 154 (Tex. 1973), the court addressed whether the named insured's minority excused him from compliance with the policy's requirement that notice of accident be promptly given, and stated: "We hold that a minor insured is not necessarily excused from complying with the notice condition . . . The age, experience, capacity and knowledge of the insured are simply circumstances to be considered in determining whether the required notice was given as soon as practicable. *See* . . . *Central Sur. & Ins. Corp. v. Anderson,* Tex. Civ. App., 446 S.W.2d 897 (no writ)." *Roman* at 158.

[7]*Weaver*, *id*. at 369, also cites *Lummus v. Western Fire Ins. Co.*, 443 S.W.2d 767 (Tex. Civ. App.–El Paso, 1969, no writ), which Justice McGee's dissent, though disagreeing with, regarded as "[a]pparently . . . the only prior Texas appellate court decision on point" and as one in which the "relevant facts are very similar to those in" *Weaver*. *Id*. at 372 (McGee, J., dissenting).  In *Lummus* the named insured, an automobile dealership, and the driver of one of its cars, a dealership customer allowed to try out the car who was allegedly an additional insured under the dealership's policy, were sued following a collision with a car

12

law since the *Weaver* opinion lead us to question whether *Weaver* controls.

B.   The Prejudice Requirement

The principal change in Texas insurance law that may call into question the applicability of *Weaver* to the facts of this case is the requirement, mandated in 1973 by the State Board of Insurance, that an insurer be prejudiced by an insured's failure to provide notice before the insurer can avoid liability due to such failure.[8]   This prejudice requirement was implemented by the Board mandating the following endorsement for all general liability policies:

> "As respects *bodily injury* liability coverage and *property damage* liability coverage, unless the company is prejudiced by the *insured's* failure to comply with the requirement, any provision of this policy requiring the *insured* to give notice of action, *occurrence* or loss, or

---

driven by the plaintiff.   Notice of the accident and of the suit were given by the dealership but not by the driver, the dealer's insurer successfully defended the suit for the dealer but did not defend for the driver, against whom a default judgment was taken.   The Court of Civil Appeals affirmed a judgment for the insurance company on the basis that even if no notice of accident were required beyond that given by the named insured and even if the driver were an additional insured, "he never sent any suit papers or citation to the insurance company, nor did he ask them to defend him.   Therefore, no action could lie against the company as this, too, was a condition precedent which was not carried out." *Id.* at 771.

[8]The State Board of Insurance, by mandating this endorsement, was apparently responding to *Member's Mutual Insurance Company v. Cutaia*, 476 S.W.2d 278 (Tex. 1972), in which the Supreme Court of Texas held that it was "better policy for the contracts of insurance to be changed by the . . . State Board of Insurance, or by the Legislature, rather than for this Court to insert a provision that violations of conditions precedent will be excused if no harm results from their violation." *Id.* at 281.   The *Weaver* majority relied on *Cutaia* without discussion of the response to *Cutaia* by the State Board of Insurance. There was no requirement for *Weaver* to mention the Board's action, however, because the policy and the events in *Weaver* pre-dated the 1973 mandatory endorsement.

13

requiring the *insured* to forward demands, notices, summons or other legal process, shall not bar liability under this policy." State Bd. of Ins., Revision of Texas Standard Provision For General Liability Policies — Amendatory Endorsement — Notice, Order No. 23080 (March 13, 1973) *quoted in Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex. App.—Houston [1st Dist.] 1993 writ denied).

C.   Subsequent Supreme Court of Texas cases discussing prejudice or *Weaver*

In *Liberty Mutual Insurance Company v. Cruz*, 883 S.W.2d 164 (Tex. 1993) (per curiam), the insurer became aware through a newspaper article that its named insured had been involved in an accident.  The insurer did not, however, receive notice of the resulting lawsuit against its insured until forty-one days after entry of an adverse default judgment.  *Id.* at 165.  The court observed that "[a]lthough notice, the condition precedent to the policy, was not given according to the policy, [the insurer] does not escape liability, unless it was 'prejudiced' because of the lack of notice." *Id.*  It went on to hold that the insurer had been prejudiced as a matter of law: "[A]n insurer that is not notified of suit against its insured until a default judgment has become final, *absent actual knowledge of the suit*, is prejudiced as a matter of law." *Id.* at 166 (emphasis added).  Apparently, the finding of prejudice as a matter of law was based on the insurer's inability to prevent the default judgment due to the lack of notice.  *See id.* ("Had [the insurer] known of the suit, it might have chosen to answer for [the insured] and litigate the merits of

14

the underlying suit."). In *Cruz*, the court did not discuss the purpose of the notice provision as it had in *Weaver*, nor did it cite *Weaver*.

In *Hernandez v. Gulf Group Lloyds*, the court again addressed the issue of prejudice. 875 S.W.2d 691 (Tex. 1994). In *Hernandez*, however, the court was dealing with the insured's failure to comply with the consent-to-settle exclusionary provision. Although the Board of Insurance's mandatory endorsement did not by its terms apply to the consent-to-settle provision and the policy in question did not otherwise contain a prejudice requirement, the court held that the consent-to-settle exclusion is unenforceable unless the insurer was prejudiced by the settlement made without its consent. *Id.* at 692-93. The court held that the stipulated facts in *Hernandez* established, as a matter of law, that the insurer had *not* been prejudiced by the unconsented settlement. The *Hernandez* court described the prejudice faced by the insurer in the *Cruz* case decided a few months before *Hernandez*: "The insured's failure to comply with the notice provision prejudiced the insurer by denying its opportunity to answer for the insured and litigate the merits of the suit or to appeal any adverse judgment." *Hernandez*, 875 S.W.2d at 693 n.3.

One year later, in *Harwell v State Farm Mutual Automobile Insurance Company*, 896 S.W.2d 170 (Tex. 1995), the court again, as it had in *Cruz*, addressed the prejudice resulting from a failure to

15

comply with the notice of suit provisions of a policy. The case involved a two car collision in which one of the drivers (Hubbard) died and the other (Leatherman) was seriously injured. Hubbard had been an additional insured under her mother's automobile liability insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm). Almost two years after the accident, Leatherman sued Hubbard's estate. On the same day, Leatherman's attorney, Groce, filed an application with the probate court seeking the appointment of Groce's legal secretary, Harwell, as administrator of Hubbard's estate. After Harwell was appointed temporary administrator of Hubbard's estate, Leatherman served Harwell with citation in the lawsuit. Harwell, however, at the time of service, had not yet qualified as administrator. Groce informed State Farm of the suit against Hubbard's estate by a letter with, *inter alia*, a copy of the petition enclosed, and advised State Farm to answer the suit to prevent a default judgment. Groce later called State Farm's attorney, Anderson, to tell him that Leatherman would amend the petition when Harwell became the estate's permanent administrator and re-serve Harwell. After Harwell qualified as administrator of Hubbard's estate, Leatherman filed his first amended petition. Harwell waived service and filed a general denial, but she never forwarded any papers pertaining to the Leatherman suit against Hubbard's estate to State Farm. When the case went to trial, Harwell appeared *pro*

16

*se* and offered no defense. Judgment was rendered against Hubbard's estate. However, Groce waited to notify State Farm, and it did not otherwise become aware, of the judgment, until after the time to appeal or file a motion for a new trial had expired. State Farm then sued Harwell and Leatherman seeking a declaratory judgment that it was not liable for the judgment against Hubbard's estate.

In the unanimous *Harwell* opinion, the court reiterated its *Weaver* observation that "[o]ne of the purposes of a notice of suit provision in an insurance policy is to notify the insurer that the insured has been served with process and that the insurer is expected to defend the suit." *Id.* at 173 (citing *Weaver*, 570 S.W.2d at 369). Although State Farm's agent had notice from Groce of Leatherman's claim against the estate, the court observed that notice of a claim is not notice of a suit. *Id.* at 174 (citing *Cruz*, 883 S.W.2d at 165 n.2). In addition, the court stated that State Farm's notice of Leatherman's intent to serve Harwell when she qualified as administrator was not the same as actual knowledge of service of process: "[I]t was Harwell's duty to notify State Farm of the suit against its insured when she received service of process; it was not State Farm's duty to determine when or if Harwell was served." *Id.* at 174. The court stated, "Until State Farm received notice of the suit, it had no duty to undertake

17

Hubbard's defense." *Id.*[9] The court further observed that "State Farm would have gratuitously subjected itself to liability if it appeared on the insured's behalf before it received notice that Harwell was joined in the lawsuit and properly served, or that she had accepted service and appeared in the suit." *Id.* (citing *Weaver*, 570 S.W.2d at 370).

The court then stated, "The insured's failure to notify the insurer of a suit against her does not relieve the insurer from liability for the underlying judgment unless the lack of notice prejudices the insurer." *Id.* (citing *Cruz*, 883 S.W.2d at 165). The court found that Harwell's failure to notify State Farm of the suit prevented State Farm from undertaking a defense and minimizing its insured's liability, and it "prejudice[d] the insurer as a matter of law." *Id.* The court also observed in a footnote, however, that "this is not a case in which the insurer received actual knowledge of a *suit* against the insured from a third party," *id.* at 174 n.3 (emphasis in original), arguably implying that the insurer's actual knowledge of the served suit might result in a different outcome.

---

[9]This court has on several occasions stated generally, albeit in contexts not similar to the present, that "under Texas law, 'the duty to defend does not arise until a petition alleging a potentially covered claim is tendered to the insurer.'" *Royal Ins. Co. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 644 (5th Cir. 2004) (quoting *LaFarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 400 (5th Cir. 1995)). *See also Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 768 (5th Cir. 1999) ("[a]n insurer's duty to defend an insured is only triggered by the actual service of process upon its insured and its relay to the insurer").

D.  Knowledge of the suit by the insurer

Texas courts of appeals have reached different conclusions when dealing with cases in which the named insured failed to comply with the policy's notice-of-suit provision but the insurer nonetheless had actual knowledge of the suit.  In *Allstate Insurance Company v. Pare*, the evidence showed that the named insured notified the insurer of the accident and that the insurer had been sent a copy of the pleadings by the plaintiff's attorney, not by the insured.  688 S.W.2d 680, 682 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.).  The evidence in *Pare* showed that, even though the insurer had actual knowledge of the suit, it "let the matter go to default."  *Id.* at 684.  The court held this evidence was sufficient to support the jury's findings that the named insured's failure to give notice of the lawsuit to the insurer did not prejudice the insurer. *Id.* at 682.  In *Member's Insurance Company v. Branscum*, on the other hand, a different court of appeals held that the insurer was prejudiced as a matter of law where the named insured failed to comply with the policy's notice-of-suit provisions and suffered a default judgment, even though the plaintiff's attorney told the insurer's adjuster that the lawsuit had been filed.  803 S.W.2d 462 (Tex. App.—Dallas 1991, no writ).  Based on this holding, the court reversed the trial court's judgment for the insured and rendered judgment for the insurer. The court distinguished *Pare* by noting that there were more

communications between the plaintiff's attorney and the insurer in *Pare*, and that the plaintiff's attorney in *Pare* sent a copy of the petition to the insurer. *Id.* at 466. The court also emphasized that no duty was created when the plaintiff's attorney informed the insurer that suit had been filed, noting instead,

> "It is the service of citation upon the insured which imposes on the insured the duty to answer to prevent a default judgment. No duty is imposed on an insurer until its insured is served and sends the suit papers to the insurer. This action by the insured triggers the insurer's obligation to tender a defense and answer the suit." *Id.* at 466–67.

More recently, in *Ohio Casualty Group v. Risinger*, the named insured never forwarded the suit papers to the insurer but the evidence showed that the insurer "had actual knowledge of the filing of the lawsuit against its insured because [the plaintiff] sent it a complimentary copy of the petition." 960 S.W.2d 708, 712 (Tex. App.— Tyler 1997, writ denied). The court relied on *Pare* and *Cruz* to support its statement that proof of the insurer's actual knowledge of suit "would show that the insurer was not prejudiced by its insured's failure [to comply with the policy's notice-of-suit condition precedent]." *Id.* at 711. It also noted that such proof would defeat the insurer's "affirmative defense of non-liability under the policy." *Id.* Although this *Risinger* language suggests that the insurer's actual knowledge means that it is not prejudiced as a matter of law, the *Risinger* court actually only concluded that the evidence was sufficient to affirm the trial

court's fact finding of no prejudice and consequent judgment against the insurer.

In *Struna v. Concord Insurance Services, Inc.*, the insurer was granted summary judgment on the argument that it was prejudiced as a matter of law by its named insured's failure to provide notice of the suit and subsequent default judgment. 11 S.W.3d 355, 357 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The court of appeals reversed and remanded for a factual determination of whether the insurer had been prejudiced because the insurer's evidence did not establish prejudice as a matter of law. *Id.* at 360. Specifically, there was "uncontroverted evidence of their actual notice." *Id.* As seen by its remand, the *Struna* court did not treat the insurer's actual notice as sufficient, as a matter of law, to defeat the insurer's claim of prejudice.[10]

Although the insurers in both *Risinger* and *Struna* had actual knowledge of the suit, the opinions do not address whether the insurer "had no reason to believe that [the insured] expected [the insurer] to defend him." *Weaver* at 369. By rejecting the insurers' argument for prejudice as a matter of law without addressing that matter, the *Risinger* and *Struna* courts derogated the second prong of the notice of suit (and service) requirement's

---

[10]It is unclear whether *Struna* involved a policy provision concerning notice of suit or service of citation as opposed to merely notice of accident and cooperation. *See id.* at 369 (quoting policy provision requiring prompt notice of "the accident" and "cooperation . . . in the investigation, settlement or defense of any claim or suit").

21

"basic purpose" — identified in *Weaver* and repeated in *Harwell* — to notify the insurer that it is expected to defend the suit. On the other hand, the insureds in *Risinger* and *Struna* were the named insureds, while the insured in *Weaver* was an additional insured — perhaps an insurer can safely assume his named insured would expect to be defended whereas such an assumption may be inappropriate with an additional insured as to whom the insurer normally has no direct contractual (or other) relationship.

E.    The special case of the ignorant additional insured[11]

The post-*Weaver* cases discussed above primarily dealt with the failure of a *named* insured to comply with the policy's notice provisions; in contrast, *Aetna Casualty & Surety Company v. Martin*, 689 S.W.2d 263 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.), dealt with an *additional* insured. In *Martin*'s underlying suit, the additional insured, Martin, was a co-defendant with the named insured, Myers-Carter, but provided its own defense because it was unaware that a defense was available from the insurer, Aetna. Aetna was aware that Martin was a co-defendant and that Martin was a customer of Myers-Carter and, therefore, that Martin was entitled to a defense under the policy. Nonetheless, Aetna did not disclose this entitlement to Martin. *Id.* at 266. After Martin

_____

[11]Of course, not all additional insureds are ignorant of their coverage under the named insured's policy. Some may be sophisticated parties that might be charged with knowledge that they are (or are likely) additional insureds. We deal here with the additional insured that does not know of coverage and is not shown to be so situated as to be presumed to know.

22

learned of the coverage, it demanded reimbursement of its legal expenses from Aetna, which denied the claim because Martin "did not timely request coverage and voluntarily incurred its legal expense." *Id.* Martin then sued Aetna, alleging breach of contract, violation of the Texas Deceptive Trade Practices Act (DTPA), violation of art. 21.21 of the Texas Insurance Code, and fraudulent misrepresentation. *Id.* Martin prevailed on its DTPA claim after the jury found that Aetna's failure "to disclose [coverage] was a 'false, misleading, or deceptive act or practice' . . . and that such failure to disclose was a producing cause of financial loss to Martin." *Id.* at 269. The court of appeals affirmed the DTPA recovery. Martin lost on its breach of contract claim, however, because the jury found that "Martin or its attorneys failed to exercise reasonable diligence in determining whether Martin was covered by a policy of insurance issued by Aetna." *Id.* at 270–71. The court of appeals also affirmed this portion of the judgment, noting that the "finding of lack of due diligence on Martin's part, coupled with Martin's failure to comply with the policy's notice provision, relieved Aetna from liability for breach of contract under the policy." *Id.*

F.   Summary

With the requirement for an insurer to show prejudice to avoid liability in certain cases, the landscape of insurance law in Texas has in some respects changed since the Texas Supreme Court's

23

opinion in *Weaver*. Just how it has changed as applied to the present context is the question faced in this case. Does an insurer have any right or duty to defend a covered suit against an additional insured with whom it has no direct relationship and who, knowing of the suit, has not expressly or impliedly requested a defense? If the insurer knows of the covered suit, what duty, if any, does it have to notify a sued additional insured (who does not know of the coverage) of the applicable coverage. What duty, if any, does a sued additional insured have in such a situation.

As to none of these related questions of law does there appear to be any controlling Texas Supreme Court precedent.

## IV. QUESTIONS CERTIFIED

We accordingly hereby certify the following three determinative questions of law to the Supreme Court of Texas:

1. Where an additional insured does not and cannot be presumed to know of coverage under an insurer's liability policy, does an insurer that has knowledge that a suit implicating policy coverage has been filed against its additional insured have a duty to inform the additional insured of the available coverage?

2. If the above question is answered in the affirmative, what is the extent or proper measure of the insurer's duty to inform the additional insured, and what is the extent or measure of any duty on the part of the additional insured to cooperate with the insurer up to the point he is informed of the policy provisions?

24

3.   Does proof that an insurer's actual knowledge of service of process in a suit against its additional insured, when such knowledge is obtained in sufficient time to provide a defense for the insured, establish as a matter of law the absence of prejudice to the insurer from the additional insured's failure to comply with the notice-of-suit provisions of the policy?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.